**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TOMAS RODRIGUEZ INFANTE,
*Petitioner-Appellant*,

v.

MICHAEL MARTEL, Warden;
CALIFORNIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,
*Respondents-Appellees*.

No. 18-55286

D.C. No.
2:17-cv-02596-
SJO-AFM

OPINION

Appeal from the United States District Court
for the Central District of California
S. James Otero, District Judge, Presiding

Argued and Submitted November 15, 2019
Pasadena, California

Filed March 13, 2020

Before: Marsha S. Berzon and Paul J. Watford, Circuit
Judges, and Robert H. Whaley,* District Judge.

Opinion by Judge Berzon

---

*The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of California state prisoner Tomas Rodriguez Infante's habeas corpus petition in which Infante maintained that a trial judge struck an impaneled juror for race-related reasons, running afoul of the prohibition on racial discrimination in jury selection.

The panel held that because Infante challenges a judge's jury strike for cause, and not an attorney's peremptory challenge, *Haney v. Adams*, 641 F.3d 1168 (9th Cir. 2011) (holding that a petitioner may not raise a *Batson* claim in a habeas petition if the petitioner failed to object under *Batson* to the peremptory strike at trial), does not bar consideration of the merits of Infante's equal protection claim.

On the merits, the panel held that because the judge's concerns reflected the juror's own statements that the juror would be biased, not discriminatory reliance by the judge on the juror's race, the judge's strike did not violate Infante's rights under the Equal Protection Clause. The panel concluded that Infante's due process and Sixth Amendment arguments fail for the same reason.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Mark Raymond Drozdowski (argued), Deputy Federal Public Defender; Hilary Potashner, Federal Public Defender; Office of the Federal Public Defender, Los Angeles, California; for Petitioner-Appellant.

Herbert S. Tetef (argued), Deputy Attorney General; Kenneth C. Byrne, Supervising Deputy Attorney General; Lance E. Winters, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Respondent-Appellee Michael Martel.

No appearance for Respondent-Appellee California Department of Corrections and Rehabilitation.

## OPINION

BERZON, Circuit Judge:

The longstanding prohibition against racial discrimination in jury selection is a critical safeguard for the criminally accused and for the integrity of the judicial system. This case, a habeas petition, centers on a California trial judge's decision to strike an impaneled juror at Tomas Rodriguez Infante's trial. Infante, the petitioner, maintains that the trial judge dismissed the juror for race-related reasons and so ran afoul of the prohibition on racial discrimination in jury selection. We conclude that the state courts correctly determined that the judge's concerns reflected the juror's own statements of race-related bias, not

discriminatory reliance by the judge on the juror's race, and so we affirm the district court's denial of habeas relief.

# I

In 2014, a jury in a California court convicted Infante of the premeditated murder of his wife. This appeal concerns the trial court's removal for cause of one of the impaneled jurors, Juror 8.

During voir dire, the juror told the court that jury service would be difficult because he was a caretaker for his sick and elderly mother. He was selected nonetheless.

After jury selection had been completed and the jury impaneled but before opening statements, Juror 8 approached the bench. The juror expressed a concern that because Infante "looks like my uncle[,] [i]t's going to be harder for me." The juror's statement prompted a colloquy between the judge and the juror. The judge told Juror 8 that he needed to know if the juror could be impartial. Juror 8 replied that "[i]t's really hard for me to say especially when it comes to the bottom of the line." Despite further prodding by the judge, the juror continued to express hesitation, explaining that "like I said, it's kind of hard for me. I know he's Filipino. I'm Filipino. It doesn't have nothing to do with that, but it just reflects [to] me that he looks like my uncle. I hope that there would be no problem when it comes to mak[ing] my own decision."

After telling Juror 8 that he could not allow his uncle's resemblance to Infante or any race-based considerations to influence him, the judge asked once more if the juror could make an unbiased decision. This time, Juror 8 replied "Yes, I will."

Juror 8 left the courtroom, and the judge discussed the exchange with the attorneys for both parties. Infante's defense counsel objected to Juror 8's dismissal, noting that he suspected the juror raised his concern about Infante's resemblance to his uncle to avoid jury service. The judge agreed that Juror 8 might have had ulterior motives but decided to excuse him. As he explained:

> [The juror] has expressed some troubling concerns to the court with respect to his ability to be impartial. He mentioned that he is Filipino. He mentioned that he knows Mr. Infante is Filipino. He mentioned Mr. Infante resembles a family member. He insisted this would make it difficult for him to perform his obligation as a juror. Now, the court pressed him on those issues, ultimately convinced him to at least perhaps say what the court would want him to say, that is, that he could still perform his obligations . . . He may have ulterior reasons to request being excused from this trial, but the most recent is the one that I think brings his suitability into question. You know, the parties need a fair trial on this case. I can't see that the prosecution would get a fair trial with this particular juror given the representations that he has made, especially based upon race, racial identity. That is my concern regardless of whether or not he resembles a family member. I don't want any allegiance to one party over the other based upon racial identification. Granted, the People's witnesses, perhaps victim are of the same race; but I think it would be best to substitute

[the juror] in for an alternate . . .This will be
done over the defense objection.

The judge dismissed Juror 8 and replaced him with an alternate. After a trial, the jury found Infante guilty of first-degree murder, and the court sentenced him to prison for twenty-five years to life.

Infante appealed his conviction to the California Court of Appeal. He argued principally that the trial judge removed Juror 8 on the basis of his Filipino ethnicity and national origin, in violation of his rights to due process and equal protection under *Batson* and its progeny. The California Court of Appeal affirmed the conviction in an unpublished decision that focused on Penal Code Section 1089, which permits a trial court to discharge a juror for good cause. Without specifically addressing either of Infante's constitutional claims, the court concluded:

Juror No. 8 raised the point that he and defendant were Filipino and that defendant looked like the juror's uncle. When questioned about his ability to be impartial, he replied that it would be "hard for me to say especially when it comes to the bottom of the line." The juror said on several occasions it would be hard for him to be impartial because defendant looked like the juror's uncle. These statements suggested that Juror No. 8 was unable to perform the function of a juror because of his inability to be impartial. Removing Juror No. 8 was not an abuse of discretion or a statutory or *constitutional* violation.

The California Supreme Court denied review in a summary decision, and the U.S. Supreme Court denied Infante's petition for a writ of certiorari.

In 2017, Infante filed a habeas petition in the Central District of California. He again argued that the trial judge's dismissal of Juror 8 violated his equal protection and due process rights.

The district court denied relief.  The court concluded that Infante's equal protection claim was procedurally barred under *Haney v. Adams*, 641 F.3d 1168 (9th Cir. 2011), because his defense counsel failed to raise a *Batson* objection when the juror was struck. Were his claim not barred, the court determined, Infante's challenge did not present a cognizable *Batson* challenge. The court also rejected Infante's due process claim on the ground that the state court reasonably concluded that there was good cause to dismiss Juror 8.

This appeal followed.

## II

### A

The district court held that *Haney* bars Infante's equal protection challenge. *See Haney*, 641 F.3d at 1168. It does not.

A *Batson* claim typically concerns the allegation that a criminal defendant has been "denied equal protection through the [prosecutor's] use of peremptory challenges to

exclude members of his race from the [] jury."[1] *Batson v. Kentucky*, 476 U.S. 79, 82 (1986). Courts enforce *Batson* through a three-step framework: First, the defendant must show "that the totality of the relevant facts gives rise to an inference of discriminatory purpose. Second . . . the state must offer permissible race-neutral justifications for the strike. Third, the trial court must decide whether, given all of the relevant facts, the defendant has proven purposeful discrimination." *Currie v. McDowell*, 825 F.3d 603, 605 (9th Cir. 2016) (citations and internal quotation marks omitted).

*Haney* held that a petitioner may not raise a *Batson* claim in a habeas petition if the petitioner failed to object under *Batson* to the peremptory strike at trial. *Haney*, 641 F.3d at 1169. *Haney's* timely objection requirement ensures that *Batson's* three steps are recorded on the trial record. *Id.* at 1172. A juror's removal would be "difficult, if not impossible, to evaluate for the first time in post-conviction proceedings when no record is preserved . . . long after the prosecutor may have forgotten the reasons for his challenges." *Id.* at 1172–73.

*Haney* does not apply to the circumstances of Infante's habeas petition. There was no need for a contemporaneous objection to create a record for appellate review. The judge explained his reason for striking Juror 8 at length and on the record. The justification for the judge's dismissal was not "forgotten" or "difficult . . . to evaluate." *Id.* at 1172–73.

---

[1] *Batson* also applies to defense counsels' alleged race-based peremptory strikes, *see Georgia v. McCollum*, 505 U.S. 42 (1992), and to civil cases, *see Edmonson v. Leesville Concrete Co.*, 500 U.S. 614 (1991).

More importantly, Infante's challenge involves *judicial* conduct. Unlike *Haney*, Infante's claim is not a traditional *Batson* challenge to a prosecutor's peremptory strike. *Id. at* 1170. *Batson's* three-step framework was never intended to assess a judge's decision to remove a juror for cause. If Infante's defense counsel had raised a *Batson* objection, it would have compelled the judge to perform the impracticable task of ruling on whether his own jury strike was racially discriminatory.

Because Infante challenges a judge's jury strike for cause, and not an attorney's peremptory challenge, *Haney* does not bar consideration of the merits of his equal protection claim.[2]

**B**

The parties dispute whether we should review the merits of Infante's equal protection claim *de novo* or under the more deferential standard of review established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). But Infante's claim fails no matter which standard we apply, so we assume without deciding that the more stringent *de novo* review standard is appropriate here.[3]

---

[2] Because we conclude that *Haney* does not preclude Infante's equal protection claim, we do not address the district court's denial of Infante's request for leave to amend to add and exhaust an ineffective assistance of counsel claim for failure to raise a *Batson* objection at trial.

[3] Infante argues that the trial judge's strike of Juror 8 violated the Due Process Clause and Sixth Amendment's guarantee of a trial by impartial jurors. *See Ristaino v. Ross*, 424 U.S. 589, 595 n.6 (1976). But, as Infante recognizes, these claims rise, and fall, alongside his equal protection claim, because they involve the same set of facts and the same ultimate question surrounding the juror's removal. If the trial judge did

The Equal Protection Clause guards against the intrusion of racial bias into the jury selection process. "[D]iscriminating in the selection of jurors . . . amounts to a denial of the equal protection of the laws." *Strauder v. West Virginia*, 100 U.S. 303, 310 (1880). *Batson* added that the Equal Protection Clause prohibits excluding jury members even on the "assumption—or []intuitive judgment—that they would be partial to the defendant because of their shared race." *Batson*, 476 U.S. at 97. Together, *Batson* and its progeny "firmly . . . rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror." *Georgia v. McCollum*, 505 U.S. 42, 59 (1992).

Infante contends that the trial judge's dismissal of Juror 8 represented the very assumption of partiality grounded in racial identity that the *Batson* line of cases seeks to root out. When dismissing the juror, the judge explained that he did not "want any allegiance to one party over the other based upon racial identification." But, according to Infante, there was no indication that Juror 8 harbored racial bias. The juror never explicitly said jury service would be difficult *because* Infante was Filipino. And after Juror 8 invoked his shared Filipino background with Infante, the juror retreated, saying "it doesn't have nothing to do with that." So, Infante argues, the judge's inference that Juror 8 would be biased

---

not impermissibly strike Juror 8, these claims fail, regardless of whether they arise from the Equal Protection Clause, the Due Process Clause, or the Sixth Amendment.

Infante also suggests in passing that Juror 8's removal violated his separate Sixth Amendment "right to [a trial by] the particular tribunal that [was] sworn and selected." But Infante has waived that argument, because he failed altogether to develop it in his briefing. *See Koerner v. Grigas*, 328 F.3d 1039, 1048–49 (9th Cir. 2003).

represented the sort of race-based assumption forbidden by the Equal Protection Clause.

Viewed more closely, however, the trial judge's jury strike was not "motivated in substantial part by discriminatory intent," *Flowers v. Mississippi*, 139 S. Ct. 2228, 2235 (2019) (citation and internal quotation marks omitted), nor was it based on attributing racial bias to a juror because of the juror's racial background. Instead, the judge had a valid reason to dismiss Juror 8: The juror himself came forward with doubts about his ability to be fair and impartial. Juror 8's repeated insistence that being objective in the trial would be "hard" for him, and his express connection of that difficulty to the defendant's appearance and ethnic origin, suggested that he was "predisposed to favor the defendant." *Powers v. Ohio*, 499 U.S. 400, 411 (1991).

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and *Cook v. LaMarque*, 593 F.3d 81 (9th Cir. 2010), both support our conclusion that the trial judge responded appropriately to Juror 8's statements. *Mitchell* similarly involved a habeas petitioner's challenge to a judge's for-cause strike of two jurors. One of those jurors stated that "having to sit in judgment of another Navajo would 'have a long-term affect on [him] . . . emotionally and to a certain extent spiritually.'" *Mitchell*, 502 F.3d at 953. In so declaring, the juror "himself injected race into the voir dire." *Id*. *Mitchell* held that striking that juror for cause did not violate equal protection because the district court was not "impermissibly drawing inferences from [the juror's] race, but permissibly from his own responses about his beliefs." *Id*. *Cook* likewise concluded that a state court appropriately determined that a prosecutor's peremptory strike of an African American juror was not discriminatory. 593 F.3d at 821. Although the peremptory strike "present[ed] a close

case because of the prosecutor's reference to race," the juror had answered "yes" when asked whether he thought his experiences with racism might cause him to be unfair in the case. *Id.* at 820–21.

As in *Mitchell* and *Cook*, Juror 8 himself raised concerns over his potential for bias. And he suggested that his shared Filipino heritage with Infante might cloud his ability to be impartial. Although he then stated "[i]t doesn't have nothing to do with that," what he appeared to be saying is that the defendant looked Filipino, as does Juror 8's uncle and as does Juror 8 himself. Given Juror 8's statements, to paraphrase *Mitchell*, the judge did not "impermissibly draw[] inferences from [Juror 8's] race, but permissibly from [Juror 8's] own responses." *Mitchell*, 502 F.3d at 953.

Moreover, the trial judge was not required to accept Juror 8's eventual pledge to be impartial. "A juror's assurance that he or she can render a fair and impartial verdict is not dispositive." *United States v. Christensen*, 828 F.3d 763, 812 (9th Cir. 2015) (citation and internal quotation marks omitted). And such a statement alone does not necessarily overcome a reasonable inference, drawn from other statements, that a juror will be unable to perform his duties. *See Uttecht v. Brown*, 551 U.S. 1, 18 (2007). Although it is rare that a juror's assertion that he could be impartial would not be given credence, here, Juror 8 initially repeated three times that it would be difficult for him to be unbiased, and, as the trial judge specifically noted, he appeared to reverse course only because the judge had "convinced him to at least perhaps say what the court would want him to say."

"[D]iscrimination on the basis of race, odious in all aspects, is especially pernicious in the administration of justice." *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 868 (2017). Here, however, we cannot say that the state court

erred when it concluded that there was no racial discrimination or unsubstantiated attribution of bias based on racial identity, only the dismissal of a juror who had come forward because he was concerned that he could not fairly consider Infante's case.

### III

In sum, we hold that *Haney* does not bar Infante from challenging the judge's strike of Juror 8 on equal protection grounds. On the merits of Infante's equal protection claim, we conclude that, because the juror stated and reiterated that he would be biased, the strike did not violate Infante's rights under the Equal Protection Clause. Infante's due process and Sixth Amendment arguments fail for the same reason. We affirm the district court's denial of Infante's habeas petition.