August 18, 2025

**Supreme Court**

No. 2023-92-C.A.
(P1/20-3378A)

(Concurrence begins on Page 50)
(Dissent begins on Page 58)

|  |  |
|---|---|
| State | : |
| v. | : |
| Miguel Montero. | : |

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email: opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

|  |  |
|---|---|
| State | : |
| v. | : |
| Miguel Montero. | : |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Goldberg, for the Court.**  The defendant Miguel Montero (defendant or Montero) was charged with two counts of first-degree child molestation sexual assault, *viz.*, fellatio, in violation of G.L. 1956 §§ 11-37-8.1 and 11-37-8.2, and two counts of second-degree child molestation sexual assault, *viz.*, penis to vagina, in violation of §§ 11-37-8.3 and 11-37-8.4.  After a jury trial, Montero was convicted on one count of first-degree child molestation sexual assault and acquitted on the remaining charges.  Montero raises five issues for our consideration.  We affirm the judgment of conviction.

## Factual Background

At the time of trial, defendant was the father to at least nine children, eight of whom were between the ages of nine and fifteen years old. One child—Anne, the complainant[1]—was born to Elaine in October 2011. After a hearing on a motion *in limine*, *see infra*, Elaine testified that she was thirteen years old when she began a "romantic relationship" with defendant, who, at the time, was approximately twenty-eight years old. Elaine explained that defendant began engaging in sexual intercourse with her at the age of thirteen, she became pregnant with Anne at the age of fourteen, and she gave birth to Anne at the age of fifteen. From the time of her birth until she was approximately three to five years old, Anne lived with Elaine in the Dominican Republic. According to travel records admitted as a full exhibit over defendant's objection, Anne came to the United States on January 22, 2015, at which time she moved to Pawtucket, Rhode Island and resided with defendant. Elaine remained in the Dominican Republic.

Anne lived in a three-story multi-residence building. Neighbors resided on the first floor; Montero, his then-wife, Dorothy, and their three children occupied the second floor; and Anne lived on the third floor with defendant's mother. In September 2016, Dorothy and her children vacated the residence and Anne relocated

---

[1] The names of all persons, except defendant, are fictitious for the purpose of preserving their privacy.

to the second floor, where defendant continued to reside. At trial, Anne was ten years old and in the fourth grade. Although she testified concerning six separate incidents of sexual misconduct involving defendant—beginning when she was in kindergarten or the first grade—the indictment charged four episodes, all of which occurred on the second floor of defendant's residence.

On one occasion, defendant steered Anne into her brother's room, removed his pants, positioned himself on top and, according to Anne, "rubbed his private part on mine." Anne clarified that the portion of the female anatomy she was referencing was used "[t]o pee," and that defendant also "put his mouth on my private part."[2] Anne also described a separate but similar incident when defendant positioned himself on top of her, "did the same thing," and "went up and down." This second incident occurred on the bed in defendant's bedroom. Anne was unable to recall how old she was when either event transpired.

A third incident transpired in a bathroom when defendant was wearing a mask due to having contracted COVID-19. On this occasion, Anne and defendant were behind a closed door with the bathroom lights turned off when defendant removed his pants, hoisted himself on top of the sink, and forced his penis into Anne's mouth.

---

[2] Anne's testimony that defendant performed cunnilingus was not charged in the indictment. Anne testified that she had not told anyone about this incident until she disclosed it to prosecutors the day before her testimony because, according to Anne, "I don't like talking about that because it's scary and I don't like talking about it."

This episode ended after defendant ejaculated into Anne's mouth. Anne testified that she was eight or nine years old when this incident occurred.

The fourth charged event occurred in the late evening hours of September 11, 2020, or the early morning hours of September 12, 2020, after defendant returned from a trip to the Dominican Republic. Anne related that she was on the third floor of the residence with other family members when defendant returned home late in the evening or the early morning. After affectionately greeting defendant, Anne testified that she went downstairs to the second floor hoping to go to sleep but soon found herself in defendant's bedroom. Montero closed and locked the bedroom door, removed his pants, and according to Anne, "put his private part in my mouth" until "white stuff came out." Anne clarified that the portion of the male anatomy she was referencing was used "[t]o pee."

The above-described sordid episodes comprised the indictment, *see infra*, but Anne also testified to two uncharged episodes of sexual misconduct involving defendant. Anne testified that during a family vacation to Virginia, she was in a room with other family members of approximately the same age when defendant "put his private part in my mouth," and similarly, during a trip to the Dominican Republic, when defendant "put his private part in my mouth." Anne estimated that the Virginia incident occurred when she was eight or nine years old, but she did not specify when the Dominican Republic incident occurred.

Anne did not suffer in silence. When she was five years old (approximately 2016 or 2017) Anne confided in Christine, an older stepsister who was then nine years old. After describing what defendant had done to her, Christine informed Anne that she had been "raped." At this point, the trial testimony is unclear whether Christine informed defendant's brother or Anne notified defendant's brother and sister; in any event, it is apparent that neither defendant's brother nor sister assisted Anne.

Shortly after the September 11-12, 2020 incident, Christine sensed a "weird vibe" emanating from Anne and asked, "[W]hat's wrong?" Anne again confided in Christine, who in turn notified defendant's sister. When defendant's sister provided no help, Christine notified a stepsister, Beth, who alerted her mother and defendant's ex-wife, Dorothy.

The next morning, Dorothy drove to defendant's residence and gathered the three children at that location, including Anne, under the ruse of an early birthday celebration for Beth. Dorothy drove to her residence where two of the children disembarked, leaving Dorothy and Anne alone in the vehicle. Dorothy testified that she asked Anne to tell her about the conversation she had with Christine concerning what "was going on in her dad's house." At trial, defendant objected to this inquiry on hearsay grounds; and, after a lengthy sidebar, the trial justice overruled the objection. Dorothy testified that Anne "told me that, um, her dad was making her

do things that she didn't want to" and that Anne "said that her dad was putting his private part on her mouth and making her swallow white things coming out of it and she said it was nasty." Dorothy's testimony further described that Anne "said that he used to, um, put his private part in her private part and move up and down" and that the last incident occurred in September 2020, after her father returned from the Dominican Republic. As a result of the conversation she had with Anne, Dorothy notified the Department of Children, Youth, and Families (DCYF).

On September 18, 2020, a DCYF Child Protective Investigator responded to Dorothy's residence and conducted several interviews, including with Dorothy, Christine, and Anne. At the conclusion of these interviews, DCYF implemented a forty-eight-hour protective hold, effectively removing Anne from defendant's residence and placing Anne in Dorothy's temporary custody. Anne was later interviewed by DCYF, the Pawtucket Police Department, and the Office of the Attorney General; subsequently, Anne was examined by Amy Goldberg, M.D., an attending pediatrician at Hasbro Children's Hospital subspecializing in the area of child-abuse pediatrics. Doctor Goldberg testified to a reasonable degree of medical certainty that her evaluation of Anne was consistent with child sexual abuse.

On November 23, 2020, a grand jury returned a four-count indictment. As set forth on the verdict form, defendant was charged with committing the following acts against Anne: count 1, on or about September 11, 2020, first-degree child

- 6 -

molestation sexual assault, *viz.*, fellatio, in the second-floor bedroom at his residence; count 2, between January 1, 2015, and September 18, 2020, first-degree child molestation sexual assault, *viz.*, fellatio, in the second-floor bathroom at his residence; count 3, between January 1, 2015, and September 18, 2020, second-degree child molestation sexual assault, *viz.*, penis to vagina, in the second-floor bedroom at his residence; and count 4, between January 1, 2015, and September 18, 2020, second-degree child molestation sexual assault, *viz.*, penis to vagina, in a second-floor bedroom at his residence. A jury found defendant guilty on count 2, and not guilty on counts 1, 3, and 4. The trial justice sentenced defendant to sixty years at the Adult Correctional Institutions, with thirty years to serve and the balance suspended, with probation. This appeal ensued.

Additional relevant facts will be set forth as needed.

**Analysis**

**I**

**Evidence Admitted Pursuant to Rule 404(b)**

The defendant posits that the trial justice erred when he permitted testimony concerning certain uncharged sexual misconduct: specifically that (1) defendant engaged in sexual intercourse with Elaine when she was thirteen years old and that Elaine was fifteen years old when she gave birth to Anne; and (2) defendant

committed acts of sexual misconduct against Anne during visits to Virginia and the Dominican Republic. The defendant was not charged with these events.

Issues concerning a trial justice's decision to admit or exclude evidence are examined under an abuse-of-discretion standard. *See State v. Rainey*, 175 A.3d 1169, 1182 (R.I. 2018). "If the evidence was admitted under Rule 404(b), then 'this Court is disinclined to perceive an abuse of discretion so long as the record contains some grounds for supporting the trial justice's decision.'" *Id.* (deletion omitted) (quoting *State v. Cavanaugh*, 158 A.3d 268, 279 (R.I. 2017)).

Rule 404(b) of the Rhode Island Rules of Evidence provides:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

It is well settled that "Rule 404(b) prohibits the admission of evidence of other crimes, wrongs, or acts 'to show the defendant's propensity to commit the crime with which he or she is currently charged.'" *State v. Mitchell*, 80 A.3d 19, 28 (R.I. 2013) (brackets omitted) (quoting *State v. Dubois*, 36 A.3d 191, 199 (R.I. 2012)). Thus, "the state may not offer evidence of a defendant's other sexual misconduct 'to prove that the defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.'"

*Id.* (brackets omitted) (quoting *State v. Mohapatra*, 880 A.2d 802, 806 (R.I. 2005)).

However, Rule 404(b) permits "the introduction of evidence of other bad acts if offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake." *Id.* In situations involving uncharged allegations of sexual misconduct, this Court has "consistently distinguished evidence of other sexual misconduct involving the complainant from that involving different victims." *Id.* at 29 n.8; *see also State v. Coningford*, 901 A.2d 623, 627 n.5 (R.I. 2006) ("This Court has refused to extend the 'lewd disposition' exception to admit testimony of persons other than the victim in a particular case."); *Mohapatra*, 880 A.2d at 806 n.4 (noting that "the lewd disposition exception 'is almost universally recognized in cases involving proof of prior incestuous relations between the defendant and *the complaining victim*'") (quoting *State v. Tobin*, 602 A.2d 528, 532 (R.I. 1992)). Accordingly, we adhere to our precedent and separately examine the Rule 404(b) appellate issues in light of the foregoing principles.

## A

### Uncharged Sexual Misconduct Involving Elaine

During a motion *in limine*, the state sought to admit testimony concerning defendant's uncharged sexual escapades with three young girls, pursuant to Rule 404(b). Specifically, the state sought to procure testimony from Elaine that

defendant engaged in sexual intercourse with her in 2007 or 2008, when she was eleven or twelve years old and defendant was twenty-six or twenty-seven years old;[3] from Dorothy that defendant engaged in sexual intercourse with her in 2003, when she was thirteen years old and defendant was approximately twenty-two years old; and from another woman that defendant engaged in sexual intercourse with her in 2004, when she was fourteen years old and defendant was approximately twenty-three years old. Relatedly, the state also sought to introduce testimony that Elaine was fifteen years old when she gave birth to Anne. All three lurid indiscretions occurred in jurisdictions where the age of consent was at least sixteen years of age.

The state proffered that defendant's past sexual exploits were sufficiently similar and nonremote to the charges in the indictment, and that the uncharged sexual misconduct demonstrated "a common plan or scheme with young girls to sexually gratify himself by penetrating the vagina of these other women." The state also argued that second-degree child molestation sexual assault required the state to demonstrate that defendant committed the assault for purposes of sexual gratification.

---

[3] During the trial, Elaine testified that she was about thirteen years old when defendant engaged in sexual intercourse with her.

The defendant objected and asserted that the past sexual encounters were not sufficiently similar to the charged sexual misconduct. In particular, defendant argued that Anne was at most eight years old when the charged sexual misconduct occurred, but that the uncharged sexual misconduct occurred with girls who were in their "double digits," meaning as applied to this matter, between the ages of eleven and fourteen. The defendant averred that unlike Anne, who is his biological daughter, the uncharged encounters all resulted from romantic relationships that eventually resulted in children. Montero also maintained that the nature of the sexual acts was dissimilar—the indictment charged sexual touching and fellatio—but the uncharged sexual misconduct involved sexual intercourse only. Finally, defendant suggested that the uncharged sexual misconduct occurred in 2003, 2004, and 2010, but the indictment charged sexual misconduct during the time period between January 1, 2015, and September 18, 2020. Accordingly, defendant argued that the sexual misconduct charged in the indictment was too remote and dissimilar and that the testimony should be excluded pursuant to Rules 403 and 404(b).

After hearing arguments, the trial justice allowed Elaine's testimony, reserved decision on Dorothy's testimony,[4] and precluded testimony regarding the third encounter. In so doing, the trial justice noted the similarities between the charged

---

[4] During its case in chief, the state called Dorothy as a witness but did not attempt to elicit testimony concerning defendant's sexual encounters with her.

- 11 -

and the uncharged sexual misconduct, observing that "there's a significant nexus between someone who is 5 to 8 years old and someone who is 11 to 12 years old. They're both extremely young." The trial justice continued that Anne is Elaine's daughter, a family member, and found that the nature of the misconduct allegedly committed against Anne was "similar enough," and that Elaine was going to testify in this case. With respect to this latter point, the trial justice reasoned that jurors will be able to observe Elaine's youthful appearance when she testifies and jurors will be able "to compute what her age would have been at the date of [Anne's] birth, therefore her sexual intercourse." Defense counsel renewed the objection during trial, which the trial justice overruled.

When considering the propriety of Rule 404(b) evidence concerning uncharged sexual misconduct with someone other than the complainant, this Court requires a three-step inquiry. First, "when the evidence offered proves prior sexual misconduct with someone other than the complainant, 'nonremote similar sexual offenses' are admissible under the exceptions of Rule 404(b)." *Mohapatra*, 880 A.2d at 806 (quoting *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978)). Second, the uncharged evidence "is admissible only when that exception is relevant to proving the charge lodged against the defendant, and only when reasonably necessary." *Rainey*, 175 A.3d at 1182 (quoting *Mohapatra*, 880 A.2d at 806). Third, "if the trial justice allows the evidence, he or she 'must instruct the jury on the limited

purpose for which the evidence may be considered.'" *Id.* (quoting *Mohapatra*, 880 A.2d at 806).[5] "In deciding whether to allow the jury to hear Rule 404(b) evidence, the trial justice has to balance relevance against remoteness and the potential for improper prejudicial impact." *State v. Perez*, 161 A.3d 487, 495 (R.I. 2017) (brackets and deletion omitted) (quoting *State v. Hopkins*, 698 A.2d 183, 186 (R.I. 1997)).

### Nonremoteness and Similarity

This Court has declared that "when a defendant's prior sexual misconduct against persons besides the complainant is introduced, it 'must be sufficiently similar and contemporaneous to support a ruling of admissibility by the trial justice.'" *Rainey*, 175 A.3d at 1182 (quoting *Mohapatra*, 880 A.2d at 806). "Both the similarity and contemporaneousness of the acts are required for a common purpose:

---

[5] This three-part inquiry is not a newly minted test, but rather, as our opinion indicates, the analysis is taken directly from this Court's precedent. To be sure, prior to the adoption of the Rules of Evidence in 1987, this Court adhered to the common law. *See, e.g.*, *State v. Jalette*, 119 R.I. 614, 624, 382 A.2d 526, 531-32 (1978); *State v. Pignolet*, 465 A.2d 176, 179-80 (R.I. 1983). However, in the nearly forty intervening years, the common-law principles discussed in cases that preceded the adoption of the Rules of Evidence, such as *Jalette* and *Pignolet*, have been abrogated and replaced with Rule 404(b) of the Rhode Island Rules of Evidence, as interpreted by this Court. As discussed *infra*, in this case, the trial justice determined that Elaine's testimony was admissible pursuant to certain textual exceptions recognized in Rule 404(b) and we likewise conclude that Elaine's testimony was admissible "to show a common scheme, plan, or modus operandi to molest young [girls]." *State v. Coningford*, 901 A.2d 623, 628 (R.I. 2006). Any suggestion that we have departed from our Rule 404(b) jurisprudence or allowed Elaine's testimony to be admitted despite recognizing a Rule 404(b) exception is misplaced.

to 'establish a close relationship between the evidence of other bad acts and the crime charged.'" *Id.* (brackets and deletion omitted) (quoting *State v. Brigham*, 638 A.2d 1043, 1045 (R.I. 1994)). We have also expressed that "[o]ur case law does not consider 'nonremote' and 'similar' to be distinct requirements, and instead the two are born from the same concept and proven in the same manner; that is, 'offenses will be considered sufficiently nonremote and similar when they are closely related in time, place, age, family relationships of the victims, and the form of the sexual acts.'" *Id.* (brackets omitted) (quoting *Mohapatra*, 880 A.2d at 806). After carefully reviewing the record, we are satisfied that the trial justice did not abuse his discretion when he determined that the limited testimony concerning defendant's uncharged sexual intercourse with Elaine when she was about thirteen years old satisfied the nonremote and similar test.

As the trial justice astutely observed, Anne and Elaine were both extraordinarily young at the time of defendant's actions; Elaine testified that she was about thirteen years old when defendant engaged in sexual intercourse, and Anne was eight years old at the time the last charged assault allegedly occurred in September 2020. Although the trial justice supportably concluded that Anne's and Elaine's ages were "pretty close" when defendant committed the sexual misconduct, we are in full agreement with the trial justice that the ages in both situations were similar because "[t]hey're both extremely young." *See State v. Perry*, 182 A.3d 558,

- 14 -

569-70 (R.I. 2018) ("The victims were of similar ages, between nine and twelve years old, when defendant's sexual abuse occurred."); *Coningford*, 901 A.2d at 628 ("Although Roger [approximately fourteen years old] was slightly older than the other two boys [seven and eight years old] at the time of his encounter with defendant, all three boys were at what may be considered a vulnerable age that would possibly make them less resistant to defendant's unwelcome advances and less likely to report the incidents to the authorities.").

The nature of the uncharged and charged sexual misconduct, while not identical, was similar in that the uncharged act involved penile penetration of Elaine while the charged act concerned defendant positioning himself on top of Anne and rubbing his penis on her vagina—just short of penetration. In considering this aspect of the Rule 404(b) analysis, "we are not concerned with whether the incidents were exactly the same, nor with whether they contained uncannily similar facts." *Perry*, 182 A.3d at 570 (quoting *Rainey*, 175 A.3d at 1183); *see also Mohapatra*, 880 A.2d at 807-08 n.5 ("The actual sexual contact need not be identical to be considered sufficiently similar to be admitted into evidence.").

Here, defendant engaged in sexual intercourse with Elaine and forced Anne to perform fellatio until he ejaculated. The defendant also positioned himself on top of Anne and rubbed his penis on his daughter's vagina. It suffices that in both the uncharged and charged situations, defendant's penis touched the vagina of a young

girl and penetrated her mouth or vagina. *See Rainey*, 175 A.3d at 1183 ("[T]he manner of abuse was similar with each victim in that both cases involved penetration, successful or otherwise.").[6]

Finally, contrary to defendant's argument, the time period between the uncharged and charged events is sufficiently nonremote. "Remoteness is relative, depending upon the circumstances and the conduct in question." *State v. Baptista*, 894 A.2d 911, 915 (R.I. 2006) (quoting *State v. Pignolet*, 465 A.2d 176, 181 (R.I. 1983)). The defendant's sexual encounters with Elaine began in approximately 2009, six years before the onset of the time period charged in the indictment when his daughter was just over three years old. We have previously held that time spans between charged and uncharged misconduct ranging from approximately ten years, *see Hopkins*, 698 A.2d at 186, eleven to fifteen years, *see Rainey*, 175 A.3d at 1183, and thirteen to nineteen years, *see Perry*, 182 A.3d at 569 n.6, satisfied the

---

[6] Although defendant's prior sexual exploits with Elaine did not involve an incestual relationship, we recognize that a trial justice's Rule 404(b) determination must be based on the totality of circumstances. Here, among other similarities, the sexual misconduct involving Anne and Elaine "suggest[s] a predilection for much younger females who may be both less resistant to his unwelcome advances and less likely to report the incidents to authorities." *State v. Mohapatra*, 880 A.2d 802, 808 (R.I. 2005); *see also State v. Rainey*, 175 A.3d 1169, 1183 (R.I. 2018) (concluding that based on the totality of circumstances sexual misconduct involving defendant's daughter and the daughter of defendant's girlfriend were sufficiently similar and nonremote). We are satisfied that the trial justice did not abuse his discretion in determining otherwise.

remoteness inquiry. We are satisfied that the trial justice issued a carefully limited ruling concerning this evidence and did not abuse his discretion when he determined that the sexual misconduct perpetrated upon Elaine and Anne was sufficiently similar and nonremote.

### Relevant and Reasonably Necessary

To be admissible under Rule 404(b), "the evidence must also be relevant to the crime charged and reasonably necessary." *Perry*, 182 A.3d at 570 (brackets omitted) (quoting *Rainey*, 175 A.3d at 1185). Pursuant to Rule 401, "relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Rainey*, 175 A.3d at 1185-86 (quoting *Perez*, 161 A.3d at 497). Rule 402 also provides that "all relevant evidence is admissible." *Id.* at 1186 (brackets omitted) (quoting *Perez*, 161 A.3d at 497). Accordingly, "the relevancy bar is quite low." *Id.* (deletion omitted) (quoting *Perez*, 161 A.3d at 497).

This Court has often recognized that "when a defendant is charged with second-degree molestation, similar incidents involving other victims are admissible to demonstrate the defendant's intent to sexually gratify." *Perry*, 182 A.3d at 570 (quoting *Mitchell*, 80 A.3d at 29). This is so because "[t]o be found guilty of second-degree child molestation, defendant's contact with the victim must be committed with the purpose of 'sexual arousal, gratification, or assault.'"

- 17 -

*Mohapatra*, 880 A.2d at 808 (quoting § 11-37-1(7)); *see* § 11-37-1(7) (defining "sexual contact" as "the intentional touching of the victim's or accused's intimate parts, clothed or unclothed, if that intentional touching can be reasonably construed as intended by the accused to be for the purpose of sexual arousal, gratification, or assault"). Indeed, we have "held that evidence of a defendant's prior sexual misconduct may be necessary for the state to show that the defendant's intent in touching the victim was for sexual gratification and to disprove that the improper touching was accidental or innocent." *Coningford*, 901 A.2d at 629.

Here, Montero was charged with two counts of second-degree child molestation sexual assault; as such, Elaine's testimony that defendant previously engaged in similar acts of sexual misconduct with a similarly-aged young girl was "relevant to demonstrate [his] specific intent to self-gratify." *Perry*, 182 A.3d at 570. This conclusion accords with our precedent. *See, e.g.*, *Mitchell*, 80 A.3d at 29 ("Although defendant asserts that intent was not at issue in this case, defendant was charged with five counts of second-degree child molestation. Second-degree molestation is a specific-intent crime that requires the state to prove beyond a reasonable doubt that the defendant touched the victim 'for the purpose of sexual arousal, gratification, or assault.'") (quoting *Coningford*, 901 A.2d at 630); *Coningford*, 901 A.2d at 629 ("[T]he jury could infer, from the evidence of similar incidents involving two other young boys, that defendant's intent in touching [the

- 18 -

complainant] was for the purpose of sexual arousal or gratification."); *Mohapatra*, 880 A.2d at 808 ("The fact that similar incidents occurred with different women tends to prove defendant's intent to touch [the complainant] for the purpose of sexual gratification.").

Additionally, Elaine's testimony fits comfortably within the Rule 404(b) exception "to show a common scheme, plan, or modus operandi to molest young [girls]." *Coningford*, 901 A.2d at 628. In *Hopkins*, we concluded that the defendant's prior sexual misconduct was admissible pursuant to multiple Rule 404(b) exceptions and demonstrated that "when given the opportunity, [the defendant] had a motive, an intent, and a plan to abuse children of like age in a like manner to that in which he abused his stepson when they were under his control or influence." *Hopkins*, 698 A.2d at 185; *see also Pignolet*, 465 A.2d at 182 (observing that uncharged sexual acts committed by the defendant were "relevant, material, and highly probative of defendant's lecherous conduct toward these young girls over whom he exercised discipline, control, and supervision").

Since *Hopkins*, this Court has remained steadfast in its determination that nonremote and similar sexual misconduct is relevant "to show a larger pattern of behavior adverse to young girls, demonstrating a plan." *Rainey*, 175 A.3d at 1186. For example, we recognized that "all three boys were at what may be considered a vulnerable age that would possibly make them less resistant to defendant's

unwelcome advances and less likely to report the incidents to the authorities," *Coningford*, 901 A.2d at 628, and that the difference in complainants' ages compared with the defendant's age "does suggest a predilection for much younger females who may be both less resistant to his unwelcome advances and less likely to report the incidents to authorities," *Mohapatra*, 880 A.2d at 808. *See also Rainey*, 175 A.3d at 1186 ("[T]estimony 'was indicative of the defendant's lecherous conduct toward girls over whom he exercised discipline, control, and supervision.'") (brackets and deletion omitted) (quoting *Perez*, 161 A.3d at 497). Thus, the trial justice did not abuse his discretion when he concluded that Elaine's testimony was relevant.

With respect to whether Elaine's testimony was reasonably necessary, this Court has recognized that "[w]hen charges of sexual abuse hinge upon a credibility contest between defendant and child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony." *Mohapatra*, 880 A.2d at 808. We later elucidated that

> "this is a case in which the evidence revealed a crime committed in private with a significant lapse of time between the sexual assaults and the prosecution. The credibility of the complainant was placed at center stage. We therefore are persuaded that this evidence meets the test of relevancy and necessity to the state's case. It is not cumulative." *Cavanaugh*, 158 A.3d at 280.

- 20 -

In the case at bar, we are faced with circumstances similar to those presented in *Hopkins*, *Rainey*, *Perez*, *Cavanaugh*, *Mohapatra*, and others. Anne testified to sexual misconduct committed by her father, defendant. The indictment charged four separate acts of sexual misconduct, three of which occurred during the expansive time period between January 1, 2015, and September 18, 2020, a span that coincides with when Anne was between three and eight years old. No physical evidence or third-party eyewitness testimony corroborated Anne's testimony and, critically, the defense theory in this case "was that the sexual assaults never occurred." *Perez*, 161 A.3d at 497; *see also Rainey*, 175 A.3d at 1186 ("Anna's credibility, then, is at 'center stage,' and Beth's testimony corroborates Anna's rendition that defendant engaged in a pattern of sexual abuse of girls to whom he was a father figure."); *Mitchell*, 80 A.3d at 29 ("[T]he evidence of defendant's touching Selina was reasonably necessary to support Hannah's credibility."); *Hopkins*, 698 A.2d at 187 ("[T]he trial justice was entitled to conclude that the uncharged acts of sexual misconduct that were offered * * * were 'reasonably necessary' to prove the prosecution's case, which largely turned on a credibility battle between [the defendant] and his stepson."). Because defendant placed Anne's credibility at "center-stage," we discern no abuse of discretion with the trial justice's determination that Elaine's testimony was reasonably necessary.

## Limiting Instruction

The Rule 404(b) analysis further requires that "when such evidence is admitted, the trial justice must instruct the jury on the limited purpose for which the evidence may be considered." *Rainey*, 175 A.3d at 1187 (quoting *State v. Merida*, 960 A.2d 228, 239 (R.I. 2008)). "We undergo a review of jury instructions on a *de novo* basis." *State v. Thibedau*, 157 A.3d 1063, 1072 (R.I. 2017) (quoting *State v. Martin*, 68 A.3d 467, 473 (R.I. 2013)).

Here, after overruling defendant's Rule 404(b) objection, the trial justice immediately instructed the jury:

> "But ladies and gentlemen, I want to let you know that you're about to hear -- you have heard testimony concerning the conduct, more testimony about conduct for which Mr. Montero is not charged.
>
> "Mr. Montero is before you only for incidents allegedly occurring with [Anne], we know that. He is not on trial for incidents that may have occurred earlier with this woman, [Elaine]. The conduct for which, the conduct which you are hearing and which you're likely to hear if this goes on, is to be considered by you only for a specific purpose, and it's up to you as to whether or not you wish to consider it at all. You must consider it only, if at all, to show that the defendant's *motive, conduct, opportunity, preparation or plan*, if any, as it relates to acts with [Anne], as described in her testimony. You may consider this testimony for no other purpose than that limited purpose as I had instructed you.
>
> "Again, Mr. Montero is not on trial for the particular acts which he may have had with [Elaine], which are being described." (Emphasis added.)

- 22 -

The defendant objected to this instruction, claiming that it was inaccurate, which the trial justice overruled. The defendant also moved to pass the case, which the trial justice denied.

On appeal, Montero suggests that the instruction failed to comply with *Jalette*, in which this Court instructed that "[i]n its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the 'other crimes' evidence is relevant and delete from its charge the remaining exceptions." *Jalette*, 119 R.I. at 627-28, 382 A.2d at 533.

While defendant suggests that the trial justice's instruction was overly broad in its inclusion of five Rule 404(b) exceptions, we have perceived no error in the use of a similar instruction. *See Rainey*, 175 A.3d at 1187 ("[Y]ou may consider the testimony only as it relates to defendant's motive, his opportunity, his intent, preparation, [or] his plan * * *.") (brackets and deletion omitted). In light of the trial justice's compliance with the relevant restrictions on admitting Rule 404(b) evidence, we conclude that the admission of Elaine's testimony was not error. *See Thibedau*, 157 A.3d at 1073 ("[The trial justice] properly informed the jury that it could not consider the uncharged acts of sexual misconduct as evidence of defendant's bad character or his propensity to commit sexual acts. He then

delineated four specific uses for which the evidence might be considered, all of which are permissible uses under Rule 404(b).").

## Rule 403

Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." (Emphasis added.) When examining evidence pursuant to Rule 403, a trial justice must "not only examine the evidence in the context of the case on trial, but * * * balance the evidence to determine whether its probative force is substantially outweighed by the danger of unfair prejudice." *Rainey*, 175 A.3d at 1188 (deletion omitted) (quoting *Cavanaugh*, 158 A.3d at 281).

On appeal, we employ the same abuse-of-discretion standard as recited above; "the admissibility of evidence is within the sound discretion of the trial justice, and this Court will not interfere with the trial justice's decision unless a clear abuse of discretion is apparent." *Perry*, 182 A.3d at 571 (brackets omitted) (quoting *Rainey*, 175 A.3d at 1187). This Court has also recognized "that a trial justice's discretion to exclude evidence under Rule 403 must be used sparingly, and it is only when evidence is marginally relevant and enormously prejudicial that a trial justice must

- 24 -

exclude it." *Id.* at 572 (brackets omitted) (quoting *State v. McDonald*, 157 A.3d 1080, 1092 (R.I. 2017)); *see also Thibedau*, 157 A.3d at 1073.

The defendant claims that Elaine's testimony was irrelevant and precluded by Rule 403 because it "was all but certain to lead the jury to conclude that Mr. Montero had a history of engaging in sexual activity with underage girls and risk[ed] him being convicted based on impermissible propensity evidence."[7] As discussed, Elaine's testimony was highly relevant, probative, and reasonably necessary due to the similarity and nonremoteness in the sexual misconduct perpetrated by defendant. When faced with similar circumstances, we rejected the defendant's Rule 403 argument and recognized that "the implication that defendant had a predilection for girls of this age * * * is enormously relevant to his common scheme or plan of abusing young girls." *Rainey*, 175 A.3d at 1188.

---

[7] Separately, defendant claims that the trial justice violated Rule 403 of the Rhode Island Rules of Evidence when his decision to allow Elaine's testimony was partially motivated by his comment that "every time you use one of these rules you hide the truth from the jury, and how much should the jury know about the real facts." The defendant overlooks the context of the trial justice's statement and, importantly, the next sentence in which the trial justice acknowledged "[i]f it's inherently prejudicial, of course it shouldn't come in." In any event, defense counsel failed to object to the trial justice's remark, which would have brought the issue to the forefront and permitted the trial justice the opportunity to elucidate on the comment. Accordingly, this asserted issue is waived and we have no occasion to consider it. *See, e.g.*, *State v. Tavares*, 312 A.3d 449, 458 (R.I. 2024) ("As we have said on innumerable occasions, a litigant cannot raise an objection or advance a new theory on appeal if it was not raised before the trial court.") (quoting *State v. Barros*, 148 A.3d 168, 172 (R.I. 2016)).

We note at the outset of this analysis that the trial justice minimized the unfair prejudice by restricting the Rule 404(b) evidence to a single witness—Elaine—the child's mother; articulating limiting instructions on the use of Rule 404(b) evidence, including an instruction that the uncharged sexual misconduct could not be used as a basis for a guilty verdict; and providing the jury with a detailed verdict form, which specified that all charges brought against defendant involved Anne, arose between January 1, 2015, and September 18, 2020, and occurred on the second floor of defendant's residence. As both the trial justice and defense counsel recognized, the actual impact of Elaine's testimony that she was a young girl when defendant engaged in sexual intercourse and when she became pregnant with Anne was obvious in her youthful appearance from the witness stand.[8]

---

[8] The trial justice's remark that the jury could glean from Elaine's youthful appearance that she was a young girl when she became pregnant with Anne was set forth earlier in this opinion. During Elaine's testimony, defense counsel acknowledged at sidebar:

> "The longer this witness is on the stand with her appearance, and I would note for the record that she appears very young, and I've learned informally through the [s]tate that she's approximately 25 years old, because she gave birth to [Anne] when she was 15, and [Anne] is now ten years old.

> "So the longer she's on the stage with the witness stand, it hurts the defendant * * *."

- 26 -

Finally, in light of the jury's acquittal on three of the four charges set forth in the indictment, we are not persuaded that defendant's conviction was based on unfairly prejudicial evidence. *See Perry*, 182 A.3d at 572 (observing that "most evidence offered at trial is inherently prejudicial * * * only *unfairly* prejudicial evidence is barred under Rule 403") (brackets omitted) (quoting *State v. Cook*, 45 A.3d 1272, 1280 (R.I. 2012)). For these reasons, we are satisfied that the trial justice did not abuse his discretion in determining that the probative value of Elaine's testimony was not substantially outweighed by unfair prejudice.

**B**

**Uncharged Sexual Misconduct Involving Anne**

During a motion *in limine*, the state sought to admit testimony from Anne that defendant committed additional uncharged acts of sexual misconduct against her during a family vacation to Virginia and while she was in the Dominican Republic. According to the state, the uncharged sexual misconduct occurred during the time span identified in the indictment, provided context concerning the charges set forth in the indictment, demonstrated a common plan or scheme, and evidenced defendant's lewd disposition toward Anne. The state also submitted that the uncharged sexual misconduct evidence was necessary to prove defendant committed second-degree child molestation and that such actions were committed for purposes of sexual gratification.

Montero objected to the admissibility of this evidence and argued that the uncharged sexual misconduct evidence was unnecessary due to the nature of the charges set forth in the indictment and that the uncharged sexual misconduct did not fall within a Rule 404(b) exception. The defendant also asserted that the uncharged sexual misconduct was inadmissible pursuant to Rule 403.

The trial justice allowed the state to submit evidence pertaining to uncharged sexual misconduct against Anne in Virginia and the Dominican Republic, but expressly limited such evidence to the time period set forth in the indictment and instructed that the evidence be used sparingly and limited to "a brief discussion of several sentences." In so doing, the trial justice determined that the uncharged sexual misconduct was necessary to establish defendant's lewd disposition toward Anne and also demonstrated a common scheme, intent, and predilection on behalf of defendant. Defense counsel twice renewed this objection during trial—separately when testimony concerning the incidents in Virginia and the Dominican Republic were elicited—which the trial justice overruled.

Under Rule 404(b), "evidence of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's lewd disposition or intent towards the person." *In re Andrey G.*, 796 A.2d 452, 457 (R.I. 2002) (deletion omitted) (quoting *State v. Gomes*, 690 A.2d 310, 316 (R.I. 1997)). Such evidence is subject to additional considerations:

"First, the evidence should be used sparingly and only when reasonably necessary. *Jalette*, 119 R.I. at 627, 382 A.2d at 533. Other-acts evidence should be excluded if it is merely cumulative. *Id.* Second, the evidence is only to be admitted when the exception is relevant to proving the charges lodged against the [defendant]. *Id.* Finally, a trial court should designate with particularity the specific exception to which the evidence is relevant and instruct the jury concerning the limited use for which the evidence is to be considered. *Id.* at 627-28, 382 A.2d at 533." *Id.* at 457-58 (quoting *Gomes*, 690 A.2d at 316-17).

We conclude that the trial justice did not abuse his discretion when he declared that these prerequisites were satisfied.

First, the trial justice expressly recognized the need to use the uncharged sexual misconduct evidence "sparingly." He limited reference to the uncharged episodes occurring in Virginia and the Dominican Republic during the period of the indictment—between January 1, 2015, and September 18, 2020—and instructed the state to limit its examination on this topic to "several sentences." The state complied with these directives.

This evidence was also reasonably necessary and not cumulative. This Court has stated that "in the context of sexual assault cases, 'when charges of sexual abuse hinge upon a credibility contest between defendant and a child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony.'" *State v. Watkins*, 92 A.3d 172, 184 (R.I. 2014) (brackets omitted) (quoting *Mitchell*, 80 A.3d at 29). We have also recognized that "evidence

- 29 -

of other not too remote sex crimes with the particular person concerned in the crime on trial may be introduced to show the accused's lewd disposition or intent towards the person." *In re Andrey G.*, 796 A.2d at 457 (deletion omitted) (quoting *Gomes*, 690 A.2d at 316); *see also State v. Morey*, 722 A.2d 1185, 1189 (R.I. 1999) (observing "an almost universally recognized exception to Rule 404(b) for the admission of evidence of uncharged sexual misconduct to show lustful disposition or sexual propensity") (quoting *State v. Toole*, 640 A.2d 965, 971 (R.I. 1994)); *State v. Mulcahey*, 762 A.2d 1214, 1217 (R.I. 2000) ("Since *Jalette*, this Court has upheld the admission of uncharged acts of sexual misconduct against the victim to establish the perpetrator's 'lewd disposition' toward that victim under circumstances that are relevant to proving the charged act of sexual misconduct."). The uncharged sexual misconduct was not cumulative but rather established defendant's common scheme, plan, intent, and lewd disposition toward Anne.

Second, the trial justice explained the relevancy of the uncharged sexual misconduct:

> "[T]his evidence for [Anne] [is] necessary in order to show a scheme, in order to show defendant's intent, predilection. They may prove, they are likely to prove the propensity for lewdness, depending on the credibility of the witness and they also go to show the credibility of the witness * * *."

As noted *supra*, the trial justice's recognition concerning the relevancy of this type of evidence comports with our precedent.

- 30 -

Finally, the trial justice identified the relevant Rule 404(b) exceptions and properly instructed the jury. As the state was about to solicit testimony that defendant penetrated Anne's mouth with his penis during a family vacation in Virginia, the trial justice instructed the jury:

> "You're about to hear some testimony or you may hear some testimony about conduct in which Mr. Montero was not charged. He was charged for events in Rhode Island. He is not on trial for other events. And therefore, you are to consider his conduct and his testimony in Rhode Island, and it's up to you to determine, as you hear the other testimony you must consider this testimony only for limited reasons. You must consider this evidence only to show if the defendant has another motive * * *. What the defendant's *motive may be, his intent, opportunity, preparation and his plan, if any*. The [c]ourt is not saying that there is any motive, opportunity or preparation." (Emphasis added.)

When the state later questioned Anne concerning the uncharged sexual misconduct committed in the Dominican Republic, the trial justice rendered a similar instruction:

> "[W]e are again getting into areas that are uncharged. [The defendant] is not charged for any acts that occurred in the Dominican Republic. The defendant is not charged. I'm going to allow this for the limited purpose that I indicated to you before.
>
> "Please consider this evidence only to show the defendant's *motive, intent, opportunity, preparation and plan, if there is any*." (Emphasis added.)

After the close of evidence, the trial justice again instructed:

> "Prior uncharged acts, * * * [Anne] talked about other incidents with her father for which he is not charged, those

- 31 -

prior uncharged acts should not be used to show the defendant's propensity, but you may use those prior acts to show *motive, intent, opportunity, preparation or plan, if any*."[9] (Emphasis added.)

The trial justice's thrice-given cautionary instruction ably complied with our precedent. *See Thibedau*, 157 A.3d at 1073 ("[The trial justice] properly informed the jury that it could not consider the uncharged acts of sexual misconduct as evidence of defendant's bad character or his propensity to commit sexual acts. He then delineated four specific uses for which the evidence might be considered, all of which are permissible uses under Rule 404(b)."); *Baptista*, 894 A.2d at 916 ("When a trial justice complies with the rules set out in *Jalette*, the admission of uncharged sexual conduct is highly discretionary."). Furthermore, although defendant contends that the trial justice failed to designate with particularity the relevant Rule 404(b)

---

[9] After the close of evidence, the trial justice initially provided a jury instruction that did not state that "those prior uncharged acts should not be used to show the defendant's propensity." The defendant objected to the absence of this verbiage and the trial justice re-instructed the jury, including the above-quoted language. After rendering the revised final jury instructions, a sidebar ensued during which neither party posed an objection to the revised jury instructions. Based on our review of the entire transcript, we do not view defendant's failure to object as waiving the argument that the trial justice's instructions failed to comply with our admonition that "in its charge the trial court should not take a scatter-shot approach and list all of the exceptions to the exclusionary rule. Rather, it shall designate with particularity the specific exceptions to which the other crimes evidence is relevant and delete from its charge the remaining exceptions." *State v. Thibedau*, 157 A.3d 1063, 1072 (R.I. 2017) (brackets omitted) (quoting *Jalette*, 119 R.I. at 627-28, 382 A.2d at 533). Throughout the transcript, it is clear that this argument was preserved.

exceptions and instead instructed the jury on "a slew of possible options," as we explained *supra*, we discern no error in the trial justice's designation of five Rule 404(b) exceptions.

## Rule 403

Montero also ascribes that the uncharged sexual misconduct testimony describing the Virginia and the Dominican Republic incidents contravened Rule 403.[10] We disagree.

Contrary to defendant's suggestion, Anne's testimony that defendant perpetrated other uncharged acts of sexual misconduct in Virginia and the Dominican Republic, including fellatio, was not unfairly prejudicial, did not have only "marginal probative value," and did not endanger confusing the jury. Rather, as discussed herein, this uncharged sexual misconduct "served to display defendant's lewd disposition or intent toward the very person alleging the acts with which he was charged." *Baptista*, 894 A.2d at 915. This evidence was highly probative of defendant's lewd predilection toward Anne, *see Thibedau*, 157 A.3d at

---

[10] The defendant maintains that "[i]nstead of balancing, the trial justice did the opposite when he declared [for a second time that]: '[A]lthough the rules don't encourage it, the [c]ourt always prefers, particularly that the witness in chief, tell as much of the story as is relevant. That we get the entire story from her to the best of her ability.'" The defendant failed to object to the trial justice's remark, which would have brought the issue to the forefront and permitted the trial justice to elucidate on the comment. Accordingly, this asserted issue is waived and we have no occasion to consider it. *See, e.g.*, *Tavares*, 312 A.3d at 458.

- 33 -

1072, and that his conduct was for purposes of sexual arousal and gratification. Additionally, we have recognized that "in the context of sexual assault cases, 'when charges of sexual abuse hinge upon a credibility contest between defendant and a child complainant, relevant evidence of prior sexual misconduct is reasonably necessary to support the complainant's testimony.'" *Watkins*, 92 A.3d at 184 (brackets omitted) (quoting *Mitchell*, 80 A.3d at 29).

Here, the uncharged sexual misconduct was relevant to proving defendant's "lewd disposition" toward Anne as well as her credibility, particularly in light of Montero's defense that he never committed the charged acts of sexual misconduct. The Rule 404(b) evidence was used sparingly and only as reasonably necessary. *See supra*; *see also Rainey*, 175 A.3d at 1188 ("[T]he implication that defendant had a predilection for girls of this age * * * is enormously relevant to his common scheme or plan of abusing young girls."). We are satisfied that the trial justice did not abuse his discretion when he admitted evidence of the uncharged sexual misconduct that occurred in Virginia and the Dominican Republic.

## II

### Prior Consistent Statements

Montero avers that the trial justice erred when he permitted testimony concerning certain prior consistent statements despite the absence of any claims of recent fabrication. The defendant directs our attention to Christine's and Dorothy's

- 34 -

testimony, both of whom were permitted to repeat the allegations as related to them by Anne. Although defendant timely objected and asserted that neither Christine's nor Dorothy's testimony was permissible pursuant to Rule 801(d)(1)(B) of the Rhode Island Rules of Evidence, it is undisputed that defendant did not—at the time that the testimony was given—rely upon the temporal requirement of recent fabrication as the basis for the objections. Dorothy completed her testimony that day, and Christine completed her testimony the following day. At the conclusion of Christine's testimony, defense counsel moved to pass the case and argued—for the first time—that Christine's and Dorothy's testimony was precluded under Rule 801(d)(1)(B) due to the absence of evidence that Anne's allegations were motivated by a *recent* fabrication. The defendant maintained that "[a]t all times the defense in this case has been that the fabrication started right at the beginning, or that there's something not credible about [Anne], right from the beginning." As such, Montero asserted that the putative motivation to fabricate the allegations of sexual misconduct preceded the prior consistent statements and that, therefore, Christine's and Dorothy's testimony was impermissible and the motion to pass should have been granted.[11]

---

[11] Having not raised the temporal requirement at the time the testimony was elicited, we assume that this issue is properly before the Court in the context of the trial justice's denial of the motion to pass. We note that the state has not developed an argument that this issue is waived. *See Drew v. State*, 198 A.3d 528, 530 (R.I. 2019)

- 35 -

With respect to evidentiary issues, "questions as to the admissibility *vel non* of evidence are confided to the sound discretion of the trial justice." *State v. Aponte*, 317 A.3d 745, 749 (R.I. 2024) (quoting *State v. Mercurio*, 89 A.3d 813, 818 (R.I. 2014)). It is also "within the sound discretion of a trial justice to grant or to deny a motion for a mistrial." *Gomes*, 690 A.2d at 317. "When a trial justice rules on such a motion, his or her denial is accorded great weight by this [C]ourt and will not be overturned on appeal unless it is clearly wrong." *Id.*

"It is well settled that out-of-court statements offered for their truth are inadmissible unless a recognized exemption or exception applies." *Aponte*, 317 A.3d at 750. Rule 801(d)(1)(B) provides, in relevant part, "that a statement is excluded from the definition of hearsay if 'the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * consistent with the declarant's testimony and *is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive * * *.*'" *Id.* (emphasis added) (brackets omitted) (quoting R.I. R. Evid. 801(d)(1)(B)).

As this Court has observed, "Rule 801(d)(1)(B) 'does not accord weighty, nonhearsay status to all prior consistent statements,' a witness's 'prior consistent

(mem.) (observing that failure to meaningfully develop an appellate argument constitutes waiver).

statements may not be admitted to counter all forms of impeachment or to bolster the witness merely because she has been discredited.'" *Aponte*, 317 A.3d at 750 (quoting *State v. Briggs*, 886 A.2d 735, 751 (R.I. 2005)). "Instead, the recent fabrication language in Rule 801 creates a temporal requirement: the consistent statements must have been made *before* the alleged influence, or motive to fabricate, arose." *Id.* (emphasis added) (quoting *Briggs*, 886 A.2d at 751).

In *State v. Kholi*, 672 A.2d 429 (R.I. 1996), we examined certain out-of-court statements, which the defendant argued were inadmissible hearsay. *Kholi*, 672 A.2d at 437-38. Specifically, the defendant suggested multiple motivations for the false accusation: (1) the declarant's desire that her mother remain in Rhode Island, (2) the declarant's wish that she not reside with her biological father, (3) the declarant's hope that her mother would divorce the defendant, and (4) the declarant's intent to file a civil action against the defendant in order to receive compensation from a state fund. *See id.* at 438. We concluded that the first three motivations preceded the declarant's utterance, "rendering them ineffective in qualifying the statements as admissible." *Id.* The fourth asserted motivation to fabricate, however, postdated the out-of-court declaration. *Id.* Because the out-of-court statement "rebutted the defendant's charge and predated any purported motive to seek compensation," we determined that the declaration satisfied the temporal requirement of Rule 801(d)(1)(B) and the prior consistent statement was properly admitted. *Id.*; *see also*

*Briggs*, 886 A.2d at 751 ("[T]he 'recent fabrication' language in Rule 801 creates a temporal requirement: 'The consistent statements must have been made before the alleged influence, or motive to fabricate, arose.'") (brackets omitted) (quoting *Tome v. United States*, 513 U.S. 150, 158 (1995)).

Here, defendant asserts that no evidence was submitted that suggests a *recent* motivation for Anne to fabricate the allegations of sexual misconduct. Rather, Montero is steadfast that Anne's motivation to fabricate the sexual misconduct allegations preceded the out-of-court disclosures to Christine and Dorothy and emanates from being separated from her mother and brought to the United States. The defendant maintains that he "never suggested that a new, intervening motive to fabricate her claim arose *after* she reported the alleged abuse to [Christine] and [Dorothy] * * *." The record does not support defendant's claim.

Contrary to defendant's proposal, it is apparent that he asserted a new motivation to fabricate in the days before trial, and well after Anne's out-of-court statements to Christine and Dorothy. For example, during cross-examination, defense counsel questioned Anne concerning meeting with the prosecution days earlier in an effort to prepare for trial. Anne was also questioned concerning a gift—Play-Doh—that this ten-year-old received from one of the prosecutors in the days leading to trial. While lengthy, we reference an excerpt from defendant's closing

argument to dispel any notion that he had not argued that Anne's allegations were motivated by *recent* fabrications:

> "Also, not for nothing, she's clearly rehearsed and rehearsed well. * * * *So the prosecutor spoon fed* [*Anne*] *her testimony so she would say the words that the prosecution wanted you to hear. She told you,* [*Anne*] *told you that she had gone over the questions with the prosecutor at least three times before she testified.*
>
> "* * *
>
> "And think about it, what [Anne] has experienced *since she made this complaint*, right? Any time she's been asked to repeat the answers to the questions, she's probably gotten a good girl, right? I know, I know this is hard for you, good girl. Right? *Just imagine the special treatment she gets from every adult that she encounters.* Not to mention now she lives in the Dominican with who? Her mom.
>
> "*And this started immediately after* [*Christine*] *and* [*Beth*] *talked to* [*Dorothy*] *and continuing right up until last week*. She's a special girl. Now, I'm not saying she's a bad person. But it is extremely possible that these allegations come from something other than sexual assault, and you have no way to tell the difference." (Emphases added.)

Under similar circumstances alleging a motive for recent fabrication, we expressed that

> "we are satisfied that the trial justice did not err when he found that defendant's cross-examination of Jane suggested the potential for improper influence in preparation for trial. The record discloses that defense counsel both directly and indirectly implied that Jane was coached by the prosecution and the police. Because it is undisputed that Jane's statements to [the DCYF

- 39 -

investigator] preceded her meetings with the prosecution and police, the trial justice correctly ruled that the statement came within the purview of Rule 801(d)(1)(B) and was, therefore, admissible." *State v. Barkmeyer*, 949 A.2d 984, 1005-06 (R.I. 2008).

Our holding in *Barkmeyer* is equally applicable in this matter because Christine and Dorothy both testified concerning Anne's out-of-court declarations of charged sexual misconduct, which preceded at least one putative motivation to fabricate. *See Kholi*, 672 A.2d at 438. The trial justice did not abuse his discretion when he denied the motion to pass.

### III

### Admissibility of the Travel Records

The defendant challenges the trial justice's decision to admit international travel records from the United States Department of Homeland Security, which, in pertinent part, detail the date and time Montero and Anne entered or departed the United States through Customs. According to defendant, the state admitted the travel records into evidence without presenting the official who prepared the travel records in violation of the right to confrontation protected by the Sixth Amendment to the United States Constitution and article I, section 10 of the Rhode Island Constitution. We disagree.

"When a criminal defendant claims on appeal that the introduction of certain evidence violated his constitutional rights of confrontation and cross-examination,

- 40 -

we review such an evidentiary ruling in a *de novo* manner." *State v. Roscoe*, 198 A.3d 1232, 1244 (R.I. 2019) (quoting *State v. Moten*, 64 A.3d 1232, 1238 (R.I. 2013)). "Both the Sixth Amendment to the United States Constitution (through the Fourteenth Amendment) and article 1, section 10, of the Rhode Island Constitution guarantee individuals accused of criminal charges the right to confront and cross-examine any adverse witnesses who testify against them." *Id.* at 1244-45 (quoting *State v. Dorsey*, 783 A.2d 947, 950 (R.I. 2001)).

In *Crawford v. Washington*, 541 U.S. 36 (2004), the United States Supreme Court departed from its precedent concerning the Confrontation Clause. The Supreme Court held that the Confrontation Clause bars admission of testimonial hearsay in a criminal case unless the declarant is unavailable and the accused has had a prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68. As this Court later recognized, "[a] statement is testimonial if it is 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" *State v. Ramirez*, 936 A.2d 1254, 1266 (R.I. 2007) (quoting *Davis v. Washington*, 547 U.S. 813, 824 (2006)). In the years after *Crawford*, the Supreme Court elucidated the testimonial or nontestimonial distinction in the context of a police interrogation and relied upon what has become known as the primary purpose test:

> "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.

- 41 -

They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis*, 547 U.S. at 822.

In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), a defendant charged with drug offenses challenged several "certificates of analysis," which verified that the seized substance had been tested and determined to be cocaine. *See Melendez-Diaz*, 557 U.S. at 308. At trial, the defendant objected to the admission of the certificates and asserted that the Confrontation Clause required the analysts to appear in person and testify. *Id.* at 309. The Supreme Court agreed and explained that "[t]he documents at issue * * * while denominated by Massachusetts law 'certificates,' are quite plainly affidavits: 'declarations of facts written down and sworn to by the declarant before an officer authorized to administer oaths.'" *Id.* at 310 (brackets omitted) (quoting Black's Law Dictionary 62 (8th ed. 2004)). Relying upon its precedent, the Supreme Court added that "[t]he 'certificates' are functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination'" and that the certificates were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial[.]" *Id.* at 310-11 (first quoting *Davis*, 547 U.S. at 830; then quoting *Crawford*, 541 U.S. at 52).

- 42 -

In this respect, it is crucial that the United States Supreme Court has indicated that business and public records are generally not considered testimonial because they are "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial * * *." *Melendez-Diaz*, 557 U.S. at 324. However, if a business or public record is "prepared specifically for use at * * * trial," it is testimonial. *Id.* Thus, the Supreme Court in *Melendez-Diaz* made clear that it did "not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Id.* at 311 n.1.

After *Melendez-Diaz*, the Supreme Court further expounded upon its Confrontation Clause jurisprudence, recognizing that when

> "the primary purpose of an interrogation is to respond to an 'ongoing emergency,' its purpose is not to create a record for trial and thus is not within the scope of the Clause. But there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony. In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant. Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Michigan v. Bryant*, 562 U.S. 344, 358-59 (2011).

As the Supreme Court later summarized, "[i]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'"[12] *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (brackets omitted) (quoting *Bryant*, 562 U.S. at 358); *see id.* at 240 ("Because neither the child nor his teachers had the primary purpose of assisting in [the] prosecution, the child's statements do not implicate the Confrontation Clause and therefore were admissible at trial."); *State v. Lopez*, 45 A.3d 1, 12 (R.I. 2012) ("Although the United States Supreme Court has not definitively or exhaustively articulated the definition of a testimonial statement, it recently has indicated that a document created primarily or 'solely for an evidentiary purpose, * * * made in aid of a police investigation, ranks as testimonial.'") (footnote omitted) (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 664 (2011)). We deem this limitation determinative of the issue before us.

In the case at bar, defendant ignores the primary purpose test, heavily relies upon *Melendez-Diaz,* and posits that the state's failure to present the official(s)

---

[12] The United States Supreme Court warned that "the primary purpose test is a necessary, but not always sufficient, condition for the exclusion of out-of-court statements under the Confrontation Clause." *Ohio v. Clark*, 576 U.S. 237, 246 (2015). For instance, the Supreme Court has "recognized that the Confrontation Clause does not prohibit the introduction of out-of-court statements that would have been admissible in a criminal case at the time of the founding." *Id.*

responsible for creating the travel records deprived him of his right to confrontation. The defendant is mistaken.

Special Agent Michael Polouski's testimony unequivocally demonstrates that the travel records were primarily "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Melendez-Diaz*, 557 U.S. at 324. Special Agent Polouski explained that he had been an agent with the Department of Homeland Security since its inception in March 2003. He detailed that "when individuals enter the United States and depart the United States, U.S. Customs and Border Protection documents those instances in their databases," that he was familiar with how travel records are maintained, and that "for the past couple decades [travel records] have been maintained in computer databases." Special Agent Polouski added that when a traveler "appl[ies] for entry at a port of entry, they're examined by [a] United States Customs Officer, and the passport is examined * * * and [if] they are found to have a bona fide reason, that application is granted, then the documents and passports are scanned into the Department of Homeland Security database; the date, the place that they enter or exited and the classification under which they were granted entry or

exit." Importantly, Special Agent Polouski testified that this process is "automatic."[13]

Based upon our careful review, we are satisfied that defendant proffers no evidence or argument, nor does the record contain such evidence, that the travel records were "created for * * * the purpose of establishing or proving some fact at trial * * *." *Melendez-Diaz*, 557 U.S. at 324; *see, e.g.*, *United States v. Noria*, 945 F.3d 847, 857 (5th Cir. 2019) ("[W]e agree with the Ninth and Eleventh Circuits that the forms' primary purpose is administrative, not investigative or prosecutorial. After all, immigration agents prepare an I-213 every time they encounter an alien suspected of being removable, regardless of whether that alien is ever criminally prosecuted or civilly removed."). Accordingly, we discern no error in the trial justice's determination that defendant's right to confrontation was not violated.[14]

---

[13] Special Agent Polouski's testimony also establishes that the travel records were excluded from the hearsay rule and admissible pursuant to Rule 803(6) of the Rhode Island Rules of Evidence, the "business-records exception." The trial testimony details that the travel records were "regularly maintained in the course of a regularly conducted business activity," "the source of the information [was] a person with knowledge," "the information [was] recorded contemporaneously with the event or occurrence," and "the party introducing the record * * * provide[d] adequate foundation testimony." *State v. Adams*, 161 A.3d 1182, 1199 (R.I. 2017) (quoting *Martin v. Lawrence*, 79 A.3d 1275, 1282 (R.I. 2013)); *see also* R.I. R. Evid. 803(6).

[14] The defendant also contends that the trial justice predetermined his guilt in midtrial as evidenced by the trial justice's comment during a colloquy on the admission of the travel records that "[w]e all know you can prove [c]ount 1." This remark appears to be in the context of proving the date on which count 1 occurred, but in any event, defendant failed to object to the trial justice's remark, which would have brought the

## IV

### The So-Called *Batson* Challenge

The defendant contends that the trial justice erred when he excused a prospective juror for cause. The prospective juror, whom defendant describes as Hispanic, alerted the jury commissioner on the first day of jury selection and advised that her ten-year-old daughter tested positive for COVID-19 the prior day. During a sidebar, the prospective juror indicated that her daughter was symptomatic, she was the sole caregiver, another household member (her boyfriend) had also tested positive for COVID-19, and another household member (a daughter) had not tested positive. At the time of the sidebar, the prospective juror had not tested positive. The trial justice overruled defendant's objection and excused the prospective juror for cause, explaining that the court had the responsibility to ensure the health and safety of other prospective jurors.

Immediately after excusing the prospective juror, defense counsel renewed the objection and argued that the court "should make every effort to keep people who are non Caucasian on the jury for the benefit of diversity * * *." The trial justice responded that defendant's argument raised the specter of *Batson v. Kentucky*, 476 U.S. 79 (1986), but the trial justice nonetheless recognized that neither party had

issue to the forefront and permitted the trial justice to elucidate on the comment. Accordingly, this asserted issue is waived and we have no occasion to consider it. *See, e.g.*, *Tavares*, 312 A.3d at 458.

exercised a peremptory challenge based upon ethnicity or national origin but rather, the court excused the prospective juror for cause. The trial justice added that at the time he was notified about the COVID-19 concern, he was unaware of the prospective juror's background and "the overriding concern of the [c]ourt at this point has to be for the safety and health of the other jurors * * *." Accordingly, the trial justice overruled defendant's *Batson*-styled objection.

On appeal, Montero argues that this issue must be viewed through a *Batson* framework and that because the prospective juror was not ill, had been vaccinated, and neither party was seeking to excuse the prospective juror, the trial justice erred. The defendant maintains that because the trial justice's reasons for excusing the prospective juror were not sufficient, "a racial motive was driving"; in other words, the excusal was racially motivated. We reject this contention.

As a threshold matter, multiple United States Circuit Courts of Appeals have determined that *Batson* does not apply to a trial justice's excusal for cause. *See Infante v. Martel*, 953 F.3d 560, 564-65 (9th Cir. 2020) ("*Batson's* three-step framework was never intended to assess a judge's decision to remove a juror for cause. If Infante's defense counsel had raised a *Batson* objection, it would have compelled the judge to perform the impracticable task of ruling on whether his own jury strike was racially discriminatory."); *United States v. Elliott*, 89 F.3d 1360, 1364-65 (8th Cir. 1996) ("*Batson* applies only to peremptory strikes. We know of

no case that has extrapolated the *Batson* framework to for-cause strikes. There is simply no legal basis for this argument, which fails to recognize that peremptory strikes, for which no reasons need be given (absent a *Batson* challenge), are different from challenges for cause, which by definition require a showing of cause."); *United States v. Blackman*, 66 F.3d 1572, 1575 n.3 (11th Cir. 1995) ("But, no authority suggests *Batson* extends to the area of challenges for cause."); *United States v. Bergodere*, 40 F.3d 512, 515-16 (1st Cir. 1994) ("Next, the defendant must show that the challenge was peremptory rather than for cause, thus bringing into play the Supreme Court's admonition that 'peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate.'") (quoting *Batson*, 476 U.S. at 96). We likewise conclude that a *Batson* challenge does not apply to a trial justice's decision to excuse a juror for cause.

Despite the foregoing conclusion, we nonetheless observe that "[t]he determination of the disqualification of a juror for cause is left to the discretion of the trial justice." *State v. Hazard*, 785 A.2d 1111, 1122 (R.I. 2001). It should be carefully exercised. Considering the circumstances before us, we are satisfied that the trial justice did not abuse his discretion when he excused the prospective juror in an effort to protect the health and safety of other prospective jurors and court staff from the effects of COVID-19.

**Conclusion**

For the reasons stated, we affirm the judgment of conviction. The papers in this case are remanded to the Superior Court.

**Justice Long, concurring.** I concur with the disposition of this appeal as decided by my colleagues in the majority. However, I write separately because I conclude that the trial justice abused his discretion in admitting Elaine's testimony regarding prior uncharged acts of sexual misconduct involving Mr. Montero, yet the error was harmless. I also write separately to express my concerns with the state of this Court's jurisprudence concerning Rule 404(b) of the Rhode Island Rules of Evidence, which are similar to those expressed by Justice Robinson.

The Advisory Committee Notes adopted in 1987 alongside our Rules of Evidence describe Rule 404(b) as a "rule of exclusion." The rule is subject to certain narrow exceptions derived either from the text of the rule or from our caselaw. *See generally State v. Jalette*, 119 R.I. 614, 382 A.2d 526 (1978). Our caselaw has modestly expanded the typical rules barring evidence of other crimes, wrongs, or acts in cases of sexual abuse. *See id.* at 627, 382 A.2d at 533. This Court's seminal case, *State v. Jalette*, recognized the common-law tradition that "evidence which in any way shows or tends to indicate that the accused has committed another crime completely independent of that for which he is on trial, even though it be a crime of

- 50 -

the same type, is irrelevant and inadmissible." *Id.* at 624, 382 A.2d at 531. Evidence of other sexual behavior is admissible, however, "when it tends to show one of the exceptions [such as intent or motive] and only when that exception is relevant to proving the charge lodged against the defendant." *Id.* at 627, 382 A.2d at 533. Notwithstanding the liberalization of the Court's exclusionary rule in *Jalette*, the Court was "extremely conscious that the indiscriminate use of 'other crimes' evidence poses a *substantial risk* to an accused's right to a fair trial." *Id.* (emphasis added). Consequently, the Court warned that trial justices should admit the evidence "sparingly * * * and only when reasonably necessary." *Id.*

Several years after this Court's decision in *Jalette*, we decided *State v. Pignolet*, 465 A.2d 176 (R.I. 1983). That case adopted a modest expansion of the *Jalette* exception in instances where the state seeks to introduce evidence of an uncharged crime involving a person other than the complainant, when the uncharged crime is similar to the charged act; we reasoned that such evidence is admissible when it tends to show the defendant's ongoing pattern of behavior and lewd disposition toward the complainant. *Pignolet*, 465 A.2d at 180-82; *State v. Quattrocchi*, 681 A.2d 879, 886 (R.I. 1996). That expansion, though at the time characterized by the author of *Jalette* as the death of *Jalette*, *see Pignolet*, 465 A.2d at 184 (Kelleher, J., dissenting), was later recognized as

> "the extreme beyond which [this Court was] unwilling to extend the other-crimes * * * exception because of its

- 51 -

overwhelming prejudice to defendant and its tendency to be viewed by the trier of fact as evidence that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offense with which he is charged." *Quattrocchi*, 681 A.2d at 886 (reversing trial court's admission of evidence of prior sexual behavior where the evidence was irrelevant to prove one of the recognized exceptions to Rule 404(b)).

Notwithstanding the historically narrow understanding of the circumstances under which evidence of sexual conduct involving persons other than the complainant is admissible, and the narrow contexts under which the rule would be modified to admit probative evidence of other sexual acts, our law has slowly retreated from strict adherence to the exclusionary principles embodied in Rule 404(b). In *State v. Hopkins*, 698 A.2d 183 (R.I. 1997), one year after having decided *Quattrocchi*, the Court recast the rule and its exclusionary purpose; rather than circumscribing the admission of this evidence to protect against the prejudice warned of in *Jalette*, *Pignolet*, and *Quattrocchi*, the Court held that evidence of uncharged acts of alleged sexual abuse is admissible "for any relevant 'other purpose' besides proving 'the character of [the accused],'" subject to a limiting instruction. *Hopkins*, 698 A.2d at 185. Although the majority in *Hopkins* nevertheless assessed whether the evidence in that case fit within any of the recognized 404(b) exceptions, it liberalized the close connection that the *Jalette-Pignolet* rule required between a recognized 404(b) exception and other-crimes evidence. *See id.*

That liberalization ultimately leads to today's description of a three-part inquiry to determine the admissibility of this evidence; this newly described test allows evidence of nonremote, similar uncharged sexual offenses to be admitted as long as they are relevant to proving the charged crime and "reasonably necessary[,]" even if the evidence does not meet one of the recognized exceptions under Rule 404(b). That rule seems, to me, circular and confusing. Today's opinion continues to expand the "other purpose[s]" for which such evidence is admissible, transforming Rule 404(b) into a rule of inclusion. The Court's continued weakening of the close connection that *Jalette, Pignolet*, and *Quattrocchi* required between evidence of an uncharged act and a recognized exception under 404(b) fails to protect the interests that underpin the purpose of Rule 404(b)'s exclusionary rule— namely, that "evidence of other sexual behavior is, by its very nature, uniquely apt to arouse the jury's hostility" and, as a result, lead to a verdict guided by animosity rather than evidence. *Jalette*, 119 R.I. at 627, 382 A.2d at 533.

While *Hopkins* and cases after it have paid lip service to the exclusionary principle embodied in *Jalette*, *Pignolet*, *Quattrocchi*, and Rule 404(b), I am compelled to conclude that the Court's continued weakening of the close connection between an uncharged act and a recognized Rule 404(b) exception, and replacement of that protection with a rule of reasonable necessity, has resulted, and will continue to result, in far more evidence of this type being admitted than the

- 53 -

*Jalette-Pignolet-Quattrocchi* Courts would have allowed. *See Hopkins*, 698 A.2d at 186. The majority declares in footnote 5 that *Jalette* and its progeny have been abrogated by Rule 404(b), as interpreted by this Court. *Quattrocchi*, however, was decided after the rules were adopted and yet relied on *Jalette* and *Pignolet* to warn against further liberalization of the standards surrounding prior bad act evidence in sexual assault cases. *See Quattrocchi*, 681 A.2d at 886. Against this backdrop and given this Court's historical reliance on *Jalette* in myriad cases discussing Rule 404(b), including those cited by the majority, I cannot agree that we have abrogated any of *Jalette*'s principles, common law or otherwise.

The majority provides citations to certain exceptions to Rule 404(b) that it believes justifies the admission of Elaine's testimony, but I fail to see how admitting her testimony under those exceptions avoids the propensity-type reasoning that Rule 404(b) is designed to avoid. The majority states that the evidence was "reasonably necessary" to prove the state's case, namely by showing a "common scheme" or "plan" to molest young girls. But analysis of the final step of the three-part inquiry— showing why evidence of a "common scheme" or "plan" is relevant to proving the charge lodged against defendant—is absent from the analysis. The majority nevertheless shores up its necessity analysis by declaring that the "common scheme" or "plan" evidence is relevant to credibility and assists in showing a larger pattern of abusive treatment toward young girls, but, to me, that assessment simply

- 54 -

encourages use of the evidence for a purpose prohibited under Rule 404(b). R.I. R. Evid. 404(b) (stating that evidence of other acts "is not admissible to prove the character of a person in order to show that the person acted in conformity therewith"). It is no surprise that evidence of other sexual assaults is, broadly speaking, "reasonably necessary" to prove a present charge of sexual assault, but I believe that the cases which form the foundation of our exclusionary rule in this context require a stronger connection between the other crimes evidence and the case at bar—I do not believe the connection has been adequately established in this case.

The Court's test adopts a version of the admissibility standard for sexual-assault evidence contained in the Federal Rules of Evidence, but without employing the process for formally adopting a modification to our rules. *See* Fed. R. Evid. 413, 414 (allowing courts to admit evidence of prior instances of sexual assault or child molestation in cases involving claims of the same and permitting that evidence to be considered on any matter to which it is relevant). But if this Court wants to amend our Rules of Evidence to deem evidence of uncharged acts in sexual-assault cases categorically or presumptively admissible, it is free to do so on its own accord. *See* G.L. 1956 § 8-6-2. In fact, adopting the Court's current test and/or sexual-assault-case specific Rule 404(b) exceptions through the rulemaking process would provide relevant stakeholders a meaningful say in the modification of evidentiary rules and would lend those rules an element of finality that this Court's

evolving understanding of Rule 404(b) lacks. Absent such a step, however, I believe we are bound to keep the exclusionary purpose of this rule in mind and remember the narrow permissible uses of this evidence under the *Jalette* and *Pignolet* cases. *See Hopkins*, 698 A.2d at 190 (Weisberger, C.J., dissenting).

Applying that more-cabined approach to the evidence presented in this case, I would conclude that Elaine's testimony was improperly admitted. Adhering to a narrow view of the rule that is one of exclusion, evidence of uncharged acts of sexual assault is admissible only when the uncharged acts are nonremote from the charged crime, similar to the charged crime, and relevant to prove an exception recognized under Rule 404(b), which itself must be relevant to prove the charged crime. *See Quattrocchi*, 681 A.2d at 885-86; *Jalette*, 119 R.I. at 627, 382 A.2d at 533. Here, Elaine's testimony was too dissimilar to the charged crime and thus not admissible under Rule 404(b). *See Hopkins*, 698 A.2d at 186 (recognizing that, as the similarity between the uncharged act and the charged crime decreases, the effectiveness of the evidence to show propensity increases). The events happened at another time, in a starkly different geographic location, to a child of a relevantly dissimilar age, who was in a significantly different relationship with defendant than the complainant and involved different types of sexual acts. *See State v. Brigham*, 638 A.2d 1043, 1045 (R.I. 1994) (holding that uncharged acts are admissible if they are "closely related in time, place, age, family relationships of the victims, and the form of the sexual

acts") (quoting *Pignolet*, 465 A.2d at 181-82); *see also Quattrocchi*, 681 A.2d at 885-86. *But see Pignolet*, 465 A.2d at 180-81 (detailing the similarity of the acts). Because that evidence is too dissimilar to the charged crime, it fails to assist in establishing any of the recognized exceptions to Rule 404(b) and serves primarily to arouse the jury's hostility. *See Jalette*, 119 R.I. at 627, 382 A.2d at 533; *see also Hopkins*, 698 A.2d at 186.  To my mind, the failure of Elaine's testimony to clear the similarity bar or meet a recognized Rule 404(b) exception compels its exclusion.

Despite my belief that the admission of Elaine's testimony was error, however, I concede that the error was harmless. *State v. DeCosta*, 293 A.3d 297, 303 (R.I. 2023) (applying harmless-error analysis to admission of Rule 404(b) evidence). That is because, in my review of the record, I believe that the complaining witness's consistent and detailed testimony, in the face of rigorous cross-examination, was sufficient for the jury to find Mr. Montero guilty of the charged crime. *See State v. Rathbun*, 184 A.3d 211, 218 (R.I. 2018) (holding that, in sexual assault cases, there is no independent requirement for corroboration of the victim's testimony).

For this reason, I concur with the majority of the Court only with respect to the disposition of the defendant's specified error concerning the admission of Elaine's testimony.

**Justice Robinson, dissenting.** I think it appropriate to begin this dissenting opinion by quoting some especially insightful words from a significant law review article which was published several decades ago. The passage of time has not diminished the potency of those words; they remain as pertinent and thought-provoking today as they were when the article was first published:

> "Strongly entrenched among many American traditions is the concept that man should not be judged strenuously by reference to the awesome spectre of his past life. When one faces trial for a specific crime, he should not be held to answer for the scandal that his earlier vices would most certainly produce. * * * Evidence of other crimes and misdeeds is not excluded because of an inherent lack of probative value, but is withheld as a precaution against inciting prejudice."[1]

I believe that those wise words provide a helpful background for the points that I wish to make in this dissent.

---

[1] M.C. Slough & J. William Knightly, *Other Vices, Other Crimes*, 41 Iowa L. Rev. 325, 325 (1956); *see also United States v. McCourt*, 925 F.2d 1229, 1235-36 (9th Cir. 1991) (referring to "a deep seated notion that our system of justice should not permit the trier of fact to infer that because someone was a bad guy once, he is likely to be a bad guy again"); *United States v. Foskey*, 636 F.2d 517, 523 (D.C. Cir. 1980) ("It is fundamental to American jurisprudence that a defendant must be tried for what he did, not for who he is.") (internal quotation marks omitted); *State v. Jalette*, 119 R.I. 614, 627, 382 A.2d 526, 533 (1978) ("We are extremely conscious that the indiscriminate use of 'other crimes' evidence poses a substantial risk to an accused's right to a fair trial.").

While I genuinely appreciate the prodigious amount of thought and hard work that have gone into the composition of the majority opinion in this difficult and troubling[2] case and while I have made a sincere effort to appreciate the reasoning of my colleagues in the majority, in the end I have concluded that I would not be true to myself if I were to join in that opinion. Accordingly, I am filing this respectful dissent. It is my strongly held view that the trial justice committed reversible error when he ruled that Elaine could testify pursuant to one of the exceptions mentioned in Rule 404(b) of the Rhode Island Rules of Evidence. That ruling allowed Elaine to testify about defendant having engaged in acts of sexual intercourse with her in the Dominican Republic when she was a young teenager and he was in his twenties.[3] I will now proceed to explain as succinctly and as cogently as possible my strongly held view that Elaine should not have been allowed to testify about those acts.

---

[2] One of the many reasons why I find this case troubling is that the jury found defendant not guilty of the two counts alleging penis/vagina contact and not guilty of one of the two counts alleging fellatio with which he was charged in the indictment. In other words, he was found not guilty of all but one of the four counts in the indictment. Jury verdicts of this sort often cause me to recall Churchill's description of Soviet Russia as being "a riddle wrapped in a mystery inside an enigma." Winston Churchill, *The Russian Enigma*, BBC Broadcast (Oct. 1, 1939), available at https://winstonchurchill.org/resources/quotes/russia-2 (last visited Aug. 14, 2025).

[3] As the majority opinion points out, Elaine eventually became pregnant; and at the age of fifteen she gave birth to Anne, who is the complaining witness in this quite unusual case.

I think it worthwhile first to take a step back to remind ourselves of the profoundly important jurisprudential policy that underlies Rule 404(b)—namely, the avoidance of criminal cases being decided on the basis of *propensity*. *See State v. Mohapatra*, 880 A.2d 802, 806 (R.I. 2005) ("In molestation or sexual assault cases, evidence of a defendant's prior sexual misconduct cannot be admitted to prove that defendant is a bad man, and that he has a propensity toward sexual offenses and, therefore, probably committed the offenses with which he is charged.") (internal quotation marks omitted); *State v. Brigham*, 638 A.2d 1043, 1044 (R.I. 1994) ("As a general rule, in the prosecution of a specific crime, evidence of past, unconnected, uncharged criminal behavior is not admissible to prove a defendant's propensity to commit the crime charged. * * * The basis for excluding such evidence of other crimes is the belief that the potential for creating prejudice in the minds of the jurors outweighs its probative value.") (internal quotation marks omitted); *State v. Lamoureux*, 623 A.2d 9, 13 (R.I. 1993) (Weisberger, J.) ("In our prior cases we have pointed out that evidence of criminal activity on the part of the accused, other than the crime with which he or she is charged, is normally inadmissible because it is irrelevant to prove the charge save by its indication that the defendant is a bad man

or woman who would therefore be predisposed to commit the crime with which he or she is charged.").[4]

I also consider it important to remain acutely mindful of the actual language of Rule 404(b), which reads as follows:

> "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that the fear was reasonable."

I consider it significant that Rule 404(b) begins with a broad statement as to the non-admissibility of "[e]vidence of other crimes, wrongs, or acts" and only then indicates that there "may" be other purposes for which such evidence could be admitted.[5] One of the potential exceptions to Rule 404(b)'s general prohibitory

---

[4] While some may consider it conceited to quote oneself, I nevertheless wish to direct the reader's attention to my concurring and dissenting opinion in the case of *State v. Mohapatra*, 880 A.2d 802 (R.I. 2005). In that opinion, I wrote at some length in order to emphasize that the purpose of Rule 404(b) of the Rhode Island Rules of Evidence and of analogous rules elsewhere is "to exclude evidence of a defendant's alleged *propensity* to commit crime * * *." *Mohapatra*, 880 A.2d at 811 (Robinson, J., concurring in part and dissenting in part). I also noted in that opinion that "our system seeks to focus the attention of the finders of fact on the evidence pertinent to the particular crime of which the defendant is presently charged." *Id.*

[5] Although this Court's cases are not consistent as to the point, it is my firm belief that Rule 404(b) is a rule of exclusion, not inclusion. *See, e.g., State v. Merida*, 960 A.2d 228, 232 n.8 (R.I. 2008) ("It should at all times be remembered * * * that Rule 404(b) is fundamentally a rule of exclusion."); *State v. Garcia*, 743 A.2d 1038,

language is when the purpose for which admissibility is sought is to prove "plan." That was the exception invoked by the state in the instant case.[6] *See State v. Gallagher*, 654 A.2d 1206, 1210 (R.I. 1995) (noting that "[e]vidence of other prior crimes may be allowed if it tends to establish the defendant's * * * plan * * * with respect to the offense charged") (internal quotation marks omitted). However, before such evidence of other prior crimes may be admitted into evidence, it is required that those crimes be sufficiently similar to the crime(s) with which the defendant has been charged. *See Mohapatra*, 880 A.2d at 806 ("This court

---

1050 (R.I. 2000) (referring to "the general exclusionary rule of Rule 404(b)"); *State v. Gallagher*, 654 A.2d 1206, 1210 (R.I. 1995) (discussing the exceptions "to this exclusionary rule"); *State v. Chartier*, 619 A.2d 1119, 1122 (R.I. 1993); *State v. Lemon*, 497 A.2d 713, 721 (R.I. 1985); *Jalette*, 119 R.I. at 624-28, 382 A.2d at 531-33. *See generally Spencer v. Texas*, 385 U.S. 554, 560 (1967) (stating that evidence of prior offenses is "generally recognized to have potentiality for prejudice" and noting that it is usually excluded except where a specific recognized exception applies).

It is my belief that both the general principle of non-admissibility which is so clearly articulated in the first sentence of Rule 404(b) as well as the Rule's recognition of the possibility of exceptions to that general principle play an important role in an ordered system of criminal (or civil) justice. I would simply emphasize the need for profound reflection by all judicial officers whenever a Rule 404(b) decision must be made. The decision whether to exclude evidence pursuant to Rule 404(b) or to admit that evidence pursuant to one of the exceptions can have a case-determinative effect, and caution should be the watchword.

[6] The majority opinion states that "[t]he state proffered that defendant's past sexual exploits were sufficiently similar and nonremote to the charges in the indictment, and that the uncharged sexual misconduct demonstrated 'a common plan or scheme with young girls to sexually gratify himself * * *.'"

repeatedly has held that prior sexual misconduct, perpetrated by a defendant against persons other than the complainant, must be *sufficiently similar* and contemporaneous to support a ruling of admissibility by the trial justice.") (emphasis added); *see also State v. Rainey*, 175 A.3d 1169, 1182 (R.I. 2018).

The majority in *Mohapatra* discussed the similarity requirement in the following significant sentence:

> "Offenses will be considered sufficiently 'nonremote' and 'similar' when they are 'closely related in time, place, age, family relationships of the victims, *and the form of the sexual acts.*'" *Mohapatra*, 880 A.2d at 806 (emphasis added) (quoting *Brigham*, 638 A.2d at 1045).

In my view, the above-quoted reference to "the form of the sexual acts" is of particular importance with respect to the similarity requirement in this case.

I am completely unable to agree with the majority that the acts of sexual intercourse in which defendant and Elaine engaged and concerning which she was allowed to testify were, as the majority has concluded, "sufficiently similar" to the sexual acts referred to in the four counts of the indictment.[7]

It is clear to me that there is no meaningful similarity between the acts of sexual intercourse that Elaine testified took place in the Dominican Republic

---

[7] Several other cases have likewise explicitly referred to "the form of the sexual acts" when listing factors to be scrutinized in considering the similarity requirement. *See, e.g.*, *State v. Perez*, 161 A.3d 487, 494 (R.I. 2017); *State v. Pignolet*, 465 A.2d 176, 181 (R.I. 1983); *State v. Cardoza*, 465 A.2d 200, 203 (R.I. 1983).

beginning when she was thirteen years old[8] and the sexual acts which defendant was charged with having committed vis-à-vis his own daughter in this country several years later.[9]

It should be clear to any adult that "the form of the sexual acts" to which Elaine testified (*viz.*, sexual intercourse) is patently not "sufficiently similar" to the sexual acts with which defendant was charged in the indictment. It is clear from the record that in the instant case "the form of the sexual acts" to which Elaine testified differed greatly from those which defendant was accused of having committed. *See Mohapatra*, 880 A.2d at 806. Accordingly, it is my opinion that Elaine's testimony should not have been admitted pursuant to the common plan or scheme exception to Rule 404(b)'s exclusionary language.

---

[8]     I am aware, as the majority opinion points out, that the age of consent in the Dominican Republic is eighteen. Accordingly, I am fully cognizant of the fact that, even though Elaine characterized her relationship with defendant as having been "romantic," it was nonetheless in violation of the law of that country. However, that fact is irrelevant to the evidentiary point at issue here—*viz.*, what I consider to be the great dissimilarity between the non-forceful acts of sexual intercourse about which Elaine testified and the very different criminal sexual acts which defendant was charged with having committed in this country. Moreover, as I wish to emphasize, the relationship between defendant and Elaine was not even remotely incestuous—whereas the sexual acts which the indictment in the instant case charged defendant with having committed would have been inherently incestuous in nature.

[9]     It will be recalled that the indictment charged defendant with two counts of fellatio and two counts of penis/vagina contact.

- 64 -

In addition to the fact that the acts of sexual intercourse described by Elaine differed from the charged acts (none of which involved intercourse), an even more glaring difference is the fact that *Anne is defendant's daughter*.  In view of what was charged, the state was required to prove that defendant engaged in sexual activity with his own daughter. I completely fail to see how Elaine's testimony about defendant's sexual intercourse with her, with there being absolutely no indication that they were then related to one another, surmounts the similarity hurdle.  As inappropriate and violative of the law of the Dominican Republic as was the sexual activity which Elaine testified that defendant engaged in with her when she was in her early teen years, the reality is that she was not defendant's daughter or other blood relative.  By contrast, the sexual activities referenced in the four charges in this case were incestuous in nature.  To my mind, that difference is enormous and is a further powerful indication that there was not *any* similarity between the acts about which Elaine testified and those for which defendant was indicted.[10]

It is true that this Court has "held on more than one occasion that, when a defendant is charged with second-degree molestation, similar incidents involving

---

[10]     The fact that Anne was defendant's daughter radically differentiates the sexual activity which he was accused of engaging in with her from the sexual activity which Elaine testified he engaged in with her.  Elaine was not related to defendant when they engaged in sexual intercourse.  It strikes me as fundamentally unfair to use the testimony of Elaine about non-incestuous sexual conduct in an attempt to convince the jury that defendant violated not only the positive law, but also the widely recognized social taboo against incestuous conduct.

other victims are admissible to demonstrate the defendant's intent to sexually gratify." *State v. Mitchell*, 80 A.3d 19, 29 (R.I. 2013); *see also State v. Perry*, 182 A.3d 558, 570 (R.I. 2018). And it is also true that this defendant was charged with two counts of second-degree molestation. However, as I have tried to make clear, it is my strongly held view that the acts of sexual intercourse about which Elaine testified are simply not similar to the perverted and incestuous deeds with which defendant was accused of having committed. How the prosecution should have sought to prove that the two alleged acts of penis to vagina contact were performed by defendant with the intent to self-gratify is an issue with which I need not grapple. What I do know is that Elaine's testimony should not have been admitted for that or any other prosecutorial purpose.

It is further my view that the admission of Elaine's testimony was definitely not harmless error. *See State v. Mercurio*, 89 A.3d 813, 822-23 (R.I. 2014). It is clear to me that Elaine's testimony portrayed defendant as being a sort of predator with a predilection for young females. I cannot comprehend why her testimony about sexual intercourse (albeit illegal) when she was a young teenager could be considered similar to the vile deeds which defendant was accused of having committed years later vis-à-vis his own young daughter. I simply do not believe that the state can be said to have proven "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Mercurio*, 89 A.3d at 822

- 66 -

(quoting *State v. Smith*, 446 A.2d 1035, 1036 (R.I. 1982)); *see also State v. Aponte*, 317 A.3d 745, 754-55 (R.I. 2024); *State v. Quattrocchi*, 681 A.2d 879, 887 (R.I. 1996).[11]

I realize that some might possibly consider this to be a close case—one that falls within the ambit of the trial justice's discretion.[12] While I do not consider the instant case to be close, I would respectfully suggest to those who are inclined to believe that there is sufficient similarity between the sexual acts at issue to make this a close case that we should follow the example of the Supreme Court of Washington, which has held that "in doubtful cases the scale should be tipped in favor of the defendant and exclusion of the evidence." *State v. Smith*, 106 Wash. 2d 772, 776,

---

[11] Because I believe that the trial court committed reversible error when allowing Elaine to testify pursuant to Rule 404(b), I see no need to discuss at length the pertinence of Rule 403 of the Rhode Island Rules of Evidence. Nevertheless, I feel obliged to summarily indicate my conviction that Elaine's testimony should have been barred by Rule 403 even if it had somehow surmounted the Rule 404(b) hurdle. I also believe that her testimony did not qualify as being "relevant" pursuant to Rule 401. *See Cardoza*, 465 A.2d at 204; *Jalette*, 119 R.I. at 625, 382 A.2d at 532.

[12] I am well aware that trial justices are accorded considerable discretion with respect to their evidentiary rulings. *See, e.g.*, *State v. Aponte*, 317 A.3d 745, 754 (R.I. 2024) ("It is well established that the decision to admit or exclude evidence rests in the sound discretion of the trial justice."); *Perez*, 161 A.3d at 493; *Mohapatra*, 880 A.2d at 805; *State v. Breen*, 767 A.2d 50, 58 (R.I. 2001). Nevertheless, while being acutely appreciative of how challenging it is for a trial justice to wrestle with difficult evidentiary issues in the context of a hotly contested case such as this one, I am convinced that it was an abuse of discretion to have allowed Elaine to testify on the basis of the trial justice's conclusion that the acts about which she testified were "similar enough" to the misconduct allegedly committed against Anne.

725 P.2d 951, 953 (1986) (brackets omitted) (quoting *State v. Bennett*, 36 Wash. App. 176, 180, 672 P.2d 772 (1983)). Even more pertinent are the following words of this Court in *State v. Costa*, 111 R.I. 602, 306 A.2d 36 (1973): "[W]e are frank to acknowledge that the question is close, but close questions in criminal cases must ordinarily be resolved in favor of the accused, in light of the latter's entitlement to the benefit of a reasonable doubt." *Costa*, 111 R.I. at 611, 306 A.2d at 40-41. *See generally United States v. Santos*, 553 U.S. 507, 514 (2008) ("Under a long line of our decisions, the tie must go to the defendant."). I see wisdom in adhering to those principles whenever a criminal case is deemed to present a close question.

As I near the conclusion of this dissent, I wish to summarize my opinion that it was reversible error to have admitted the testimony of Elaine for two separate and independent reasons: (1) the sexual acts to which Elaine testified were not sufficiently similar to the sexual acts alleged in the indictment; and (2) the sexual acts in which defendant and Elaine participated in the Dominican Republic were not incestuous in any sense, whereas each of the four counts in the indictment alleged conduct that would be completely incestuous and therefore radically dissimilar to the acts about which Elaine testified. For each of those reasons viewed separately and, *a fortiori*, when the two reasons are viewed as a totality, the admission of Elaine's testimony was reversible error.

I conclude this dissent by again expressing my sincere admiration for the workmanlike nature of the majority's comprehensive opinion. Nevertheless, I remain convinced that Rule 404(b), as I understand it, should have constituted an absolute bar to Elaine's testimony.[13] My strong disagreement with the majority as to that important point has resulted in this respectful dissent.

---

[13]    Since I believe that the admission of Elaine's testimony constitutes reversible error in and of itself, I see no reason to comment, one way or another, on defendant's other claims of error.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Miguel Montero. |
| **Case Number** | No. 2023-92-C.A. (P1/20-3378A) |
| **Date Opinion Filed** | August 18, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Maureen McKenna Goldberg |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For State: Virginia M. McGinn Department of Attorney General |
| | For Defendant: George J. West, Esq. |